1821.

MURRAY
v.
MURRAY.

J. V. MURRAY *against* J. B. MURRAY, CLARK and others.

Where a commission of bankrupt was issued against one partner, and the assignees brought a suit to recover partnership property in the hands of trustees, to which the solvent partner, as well as the bankrupt and his assignees were made parties; and the *solvent* partner demurred to the bill, on the ground that the funds of the partnership ought not to be paid to the assignees, which was overruled, and after answer, a reference was made, and an account taken, and the trustees settled the amount with the assignees: *Held*, that the solvent partner was concluded by the decree and settlement in that suit, and could not reassert the same claim in a collateral action. A decree can never be impeached by an original bill, or in another suit.

The assignees of a bankrupt partner, under a separate commission, are tenants in common with the solvent partner: and where the assignees have got possession of the partnership funds, the solvent partner cannot call them out of their hands; or compel them, or partnership debtors who have settled with them, to account. The solvent partner is entitled only to his share of the *surplus*, after the partnership debts are paid. Besides, the assignees of the bankrupt have higher equities than ordinary tenants in common, for the purpose of an equal rateable distribution of the joint funds, &c.

*Nov.* 6, 1820, and *Jan.* 12, 1821.

THE plaintiff, on the 10th of *February*, 1808, filed his bill against *John B. Murray, John Innes Clark*, and others, which, in consequence of the death of *Clark*, was afterwards amended by making his executors parties. The plaintiff, *Robert Murray*, (since deceased) *George W. Murray*, and *John R. Wheaton*, in 1790, entered into partnership, and established their house of trade, under the firm of *Robert Murray & Co.* The house failed in 1796, at which time the plaintiff was in *England*, whither he had gone on the business of the firm: *G. W. M.* and *Wheaton* went to *Europe*, leaving *R. M.* the only partner in this country. *R. M.* for himself, and his copartners, by virtue of a power of attorney from them to him for that purpose, in 1798, and afterwards, made several assignments of the partnership property to *J. B. M.* and *Clark*, in trust, for the payment of

particular creditors. The bill charged that *J. B. M.* and
*Clark*, in his lifetime, respectively received large sums of
money under the assignments so made to them, far exceed-
ing the amount of debts directed to be paid, and leaving a
balance in their hands, to be accounted for to whoever was
entitled to it. After the assignments were made, *R. M.*,
*G. W. M.*, and *J. R. W.* respectively, became bankrupts, under
the bankrupt law of the *U. S.* of *June*, 1800, and separate
commissions were issued. The estate and effects of *R. M.*
were assigned to *Caleb S. Riggs*, *Samuel Ward*, and *Charles
M'Evers*; the estate and effects of *G. W. M.* were assigned
to *Ward* and *V. Hayley*, and the estate and effects of *J. R.
W.* to *Riggs*, *Ward*, and *M'Evers*, and these assignees, as
well as the executor of *Robert Murray*, deceased, were made
defendants. The several bankrupts obtained certificates of
discharge, pursuant to the act. The plaintiff, *J. V. M.*,
who returned to the *U. S.* after the failure of the house, was
never declared a bankrupt under the law of the *United States*,
nor has he ever obtained the benefit of any insolvent act of
any state. The bill prayed, that the defendants, *J. B. M.*
and *Clark* might account, &c. and be decreed to deliver up
to the plaintiff, all the books, accounts, and vouchers, be-
longing to the firm ; and pay the balance of moneys receiv-
ed, and deliver up all securities relative to the estate of the
firm, &c. and for general relief. The defendants put in their
several answers to the bill; and *J. B. M.* annexed to his an-
swer an account of the moneys received and paid by him,
under the assignments above mentioned, and submitted him-
self to the order of the Court, alleging that large sums of
money were received separately by *Clark*, of which he could
render no account.

*O. Kane*, the acting executor of *Clark*, in his answer, ad-
mitted the assignments, as stated in the bill, and that *C.* re-
ceived large sums of money under them, in his lifetime; but
he refused to render any account thereof to the plaintiff, in-
sisting that he was not bound to render any account to him,
and that the plaintiff was not entitled to any such account;

and, among other reasons for such refusal, he alleged that the plaintiff was made a bankrupt in *England*, under the bankrupt laws of that country, and that a commission of bankruptcy had been issued against the plaintiff, and assignees appointed. The defendant, *K.*, moreover, insisted, that since the death of *C.*, and during the pendency of this suit, he, *K.*, as executor of *C.*, had made a settlement with the assignees of *Robert Murray*, under the bankrupt act, touching all the moneys received by *C.* in his lifetime, under the assignment, and had taken a discharge from the assignees. Replications were filed, and the cause was brought to a hearing on the 6th of *November* last, for the purpose of obtaining the opinion of the Court, whether the plaintiff was entitled to an account from *J. B. Murray*, and from *K.*, the acting executor of *Clark*, and to the payment of the balance in their hands, or to any, and what part of it, to the end, that if the plaintiff was so entitled, and the account refused by *K.*, he might be ordered to account before a master; and if the plaintiff was not entitled to such account, that the bill might be dismissed.

*November* 6, 1821. The cause was argued by *Wells* and *T. A. Emmet*, for the plaintiff, and by *S. Jones* and *D. B. Ogden*, for the defendants.

*For the plaintiff*, it was insisted, that the plaintiff, being the only partner of the house of *R. M. & Co.* who had not been discharged by the bankrupt law, or by any insolvent act, alone remained liable for the outstanding debts of the firm, and was, therefore, justly entitled to be put in possession of the funds of the partnership; and that the defendants, who were not so liable, ought not to have the distribution of those funds. The assignees of an individual partner are not competent, and have no right to the control and distribution of the partnership funds, so long as there is a solvent partner remaining. They are only entitled to a share of the surplus, after the partnership debts are paid, and the part-

nership accounts taken and settled. (*Taylor* v. *Fields*, 4
*Vesey*, 396. 12 *Mod.* 446. *Anon. per Holt*, C. J.) *Bank-
ruptcy*, like the *death* of one partner, dissolves the copart-
nership, and the *solvent partner*, in the one case, like the
*survivor* in the other, is entitled to the possession and distri-
bution of the partnership property. The analogy exists,
and must be supported throughout.

Again; bankruptcy is like a statute execution; but an
execution against one partner can take only his separate
share, or the surplus, after all the partnership debts and ac-
counts are settled. (11 *Vesey*, 78. 2 *Johns. Ch. Rep.* 548.
16 *Johns. Rep.* 102´ and *note*. 4 *Vesey*, 756.)

It is not, *of course*, that joint debts may be proved under
a separate commission; and it is not, therefore, *of course*,
that a separate commission sweeps away the whole joint
property. The true rule is, that where there is a *solvent*
partner and a joint estate, the solvent partner is to have
the management of the joint property. If there is no joint
estate, then the joint debts may be proved under a se-
parate commission. There are only two cases in which the
assignee under a separate commission is entitled to deal with
the joint property; the one is where the solvent partner is
abroad; (*Barker* v. *Goodwin*, 86. 1 *Montagu on Partner-
ship*, 153.); the other is where the property is left in the pos-
session of the bankrupt partner, at the time of his bank-
ruptcy. (1 *Montagu on Partnership*, 151. 1 *East*, 369.)
The assignees under a joint commission are tenants in
common with the solvent partner; they are entitled only to
the bankrupt's share of the partnership property, after the
partnership accounts are taken; and the solvent partner is
as much bound to settle the partnership concerns as the as-
signees. (1 *Montagu on Partnership*. 150, 151.) It would
be extremely oppressive and unjust, as regards the *solvent*
partner, if the assignees of the bankrupt should have a right
to administer, and distribute the joint property. He is, in
every respect, the best qualified; and sound policy, as well

1821.

MURRAY
v.
MURRAY.

1821.

MURRAY
v.
MURRAY.

as justice, is in favour of vesting the distribution of the part-
nership fund in the hands of the solvent partner. (*Cook's
B. L.* 123. 2 *Atk.* 528. 4 *Vesey,* 396.) In *England,* the
assignees of joint creditors have no voice in the appointment
of the assignees under a separate commission.

*For the defendants,* it was contended, that a reference and
account having been taken, by consent, in the cause of *Riggs*
and others, assignees of *R. M.,* against the *Murrays, W.*
and *C.,* (2 *Johns. Ch. Rep.* 365.) and in which the validity
of the assignments was established by the Court for the Cor-
rection of Errors, (15 *Johns. Rep.* 571.) the whole matter,
as regarded the defendant *J. B. M.,* must be considered as
settled.    That as it respected *Clark,* or his representatives,
it appeared that a bill was filed, in 1801, by the same as-
signees against the plaintiff and his partners, *J. B. M.* and
*Clark,* for an account, and praying that the partnership
funds, &c. might be paid to them, to enable the assignees to
pay the partnership debts ; that a reference was made by
consent, and an account accordingly taken, and a balance
of 78,328 dollars found against *Clark ;* and his executors
having proposed to pay the amount in lands, it was agreed
to by the assignees, who executed a formal release, in *Febru-
ary,* 1810.    The representatives of *C.* were not, after this
discharge, accountable to the plaintiff.    Most, if not all the
joint debts have been proved under the separate commission
against *R. M.,* who has been discharged, and these creditors
are bound by the proof of their debts.    The plaintiff has
been insolvent for many years, and declared a bankrupt in
*England ;* and yet, in face of all these accounts and settle-
ments, and of all these transactions, he now claims possession
of the partnership funds !

*Bankruptcy* does not operate like death, in dissolving a
copartnership, for it does not carry the joint property to the
solvent partner ; it transfers the interest of the bankrupt

to his assignees, and makes them and the solvent partner *tenants in common*, subject to his equitable rights. This is the sound and reasonable rule, and is to be found in all the books. (11 *Vesey*, 78. *Whitemarsh on Bankr.* 305. 5 *Vesey*, 295. *Cowper*, 448.) Now, each tenant in common has an equal right to the possession of the property. The plaintiff, as a tenant in common, has no right to call on the others to give up to him the common property. The analogy between bankruptcy and death, exists no farther than that they both dissolve the partnership. Bankruptcy creates a tenancy in common, and the joint tenancy ceases; but in case of the death of one partner, the right of *survivorship* takes place. (2 *Christian's Bank. Law*, 268.) The assignees of the bankrupt may seize on all the tangible partnership property, and collect all the partnership debts, for the purpose of distribution. The solvent partner can only claim the *surplus* : but the defendants, after payment of the debts, became trustees for *Robert M. & Co.*, not for the plaintiff. The settlement of the partnership concerns must be left entirely with the assignees of the bankrupt, and the plaintiff can come in only for his share. A plaintiff in execution may sell the interest of one partner, subject to the partnership claims and equities. The assignees of the bankrupt acquire peculiar equities.

A *joint* commission of bankruptcy has gone almost into disuse; for joint creditors may prove their debts under a separate commission. The joint creditors come in first on the joint estate, and if that is exhausted, they may go on the separate estate. And the assignees under a separate commission, keep distinct and separate accounts, as to the joint and separate estate. (*Christ. B. L.* 262. *Cook's B. L.* 258. 1 *Rose, B. L.* 21, note *a*. 1 *Rose*, 10. 17 *Vesey*, 193. 16 *Vesey*, 194. *Willes' Rep.* 467. 1 *Atk.* 133.) This rule, which is now adopted, has been found to be the most reasonable and practicable. A joint commission must

be against all the partners, and if one of them resides abroad, there cannot be a joint commission. Hence has arisen the necessity and utility of a separate commission. If the doctrine contended for by the plaintiff's counsel was to prevail, the solvent partner abroad might come and take all the property from the assignees into his own hands, and entirely defeat their administration of the estate. If the other partner be solvent, then he ought to pay, and he will be entitled to his share of the property ; but if he is insolvent, it would be extremely unjust to permit him to call the partnership property out of the hands of the assignees, and trade with it, or sell it. He might give preferences, and thereby defeat the whole equity of the bankrupt system, by which the funds are to be distributed *pari passu.* (1 *Johns. Rep.* 118. *Comb.* 217. 4 *Vesey*, 396.)

If the rule relied upon by the plaintiff's counsel is well founded, the separate commission could never reach joint property. But partnership debts, as well as private debts, pass by the plain language and meaning of the act. The solvent partner, and the assignees of the bankrupt partner, must all join in a suit at law to recover a partnership debt. The *solvent* partner cannot sue alone. This shows that he has not the exclusive control and distribution of the fund.

Again, the defendants are in the legal possession of the funds. The suit brought by the assignees, was four years before the plaintiff filed his bill. All the equity in this case might, and ought to have been brought forward in that suit. If the ground now taken by the plaintiff be tenable, that suit was improperly commenced, and there should have been a plea or demurrer interposed. But the parties went on, until a final report, and a compromise and settlement was made between them, which is now binding. Either the plaintiff must be deemed to have waived his right, or it has been adjudged against him. There cannot be several distributions of the same estate, and several suits. The first assignees of

the bankrupt had a right to take and distribute the property. The partnership was dissolved. If there was joint property only, separate commissions would be idle. Where joint and separate commissions are both issued, the latter is superseded. (1 *Atk.* 252. 1 *Vesey & Beame's Rep.* 60. 15 *Vesey*, 115. 530. 16 *Vesey*, 237. 476.) It is admitted by the plaintiff, that the joint property is not sufficient to pay the partnership debts. What interest, then, can he have in the question? The joint creditors are alone interested, and they have given their assent, by coming in and proving their debts; and a majority of the joint creditors agreed to the compromise and settlement made between the assignees and the representatives of *Clark.*

THE CHANCELLOR. The question in this case, between the plaintiff and the assignees of his bankrupt partner, relates to the control and distribution of the partnership fund. The plaintiff, in a particular manner, claims the balance reported to be due from the estate of *John I. Clark*, deceased, to the house of *Robert Murray & Co.*, and insists that he is entitled, in preference to the assignees, to distribute that balance, and to disregard the settlement which was made by those assignees with the executor of *Clark.*

The defendant *John B. Murray*, and *John I. Clark*, were trustees to a large amount, under assignments from the house of *Bobert Murray & Co.*, and though the bill seeks to call both those trustees to account, and to claim the balance due from each of them, yet the plaintiff's counsel, upon the argument, did not seem to press, very seriously, his claim against *John B. Murray*, who had already accounted and settled with the assignees. The account of *J. B. Murray*, was taken and stated *with the assent of the plaintiff;* and we will first examine whether the plaintiff be not now concluded in respect to his claim against *J. B. Murray.*

1821.

MURRAY
v
MURRAY.

1. The earliest commission of bankruptcy was taken out against *Robert Murray*, and his property was assigned under the bankrupt act, on the 2d of *July*, 1801 ; and on the 8th of *September*, 1801, the present defendants, *Riggs*, *Ward* and *M'Evers*, as his assignees, filed their bill to call *Clark* and *J. B. Murray* to account for the partnership property, and all the partners of the house of *Robert Murray & Co.*, including the present plaintiff, were made parties to the bill. The bill prayed that those two trustees might be decreed to pay over to them the partnership effects in their hands, in order that they might pay the parnership debts. The partnership debts were alleged to amount to upwards of 700,000 dollars, and the private property of *Robert Murray*, exclusive of his share in the partnership property, was stated to be very inconsiderable.

To this bill a demurrer was filed by the present plaintiff, on the ground that the funds of the house of *Robert Murray & Co.*, held by *J. B. Murray* and *Clark*, ought not to be paid to the assignees.

This demurrer was filed on the 5th of *March*, 1805, and it raised the very question now under discussion in this suit. It was overruled, on the 9th of *April*, 1807, and the present plaintiff ordered to answer. We find, that afterwards, on the 16th of *October*, 1812, when the cause came on to be heard, that a rule was entered by consent of the assignees, and of the defendant *John B. Murray*, and of the present plaintiff by his solicitor, directing a reference to a master, to take an account of the moneys received and paid by the defendant *John B. Murray*, under the said trust. An account was taken in pursuance of this reference, and finally settled with the assignees.

After the demurrrer was put in and overruled, and after the assent to a reference, in respect to *J. B. Murray*, in the suit brought by the assignees, and after a decision in that case in favour of the right of the assignees to the balance

finally liquidated against *J. B. Murray*, the present plaintiff is legally and justly concluded from questioning the validity of the accounting between *J. B. Murray*, and the assignees. He cannot, in this collateral suit, disturb that settlement, for he consented to the account being taken *in that suit*, and, of course, under the claim, and at the instance of the assignees of *Robert Murray ;* and he made no further opposition to the proceedings in the cause, down to its final termination. And though in the decree in *September*, 1817, confirming the master's report, and awarding to the assignees the nett sum received by *John B. Murray*, as a trustee, the right of the present plaintiff to question the appropriation of that sum to the assignees was reserved, at the instance of his counsel ; yet that reservation gave him no new right, and he had already parted with his right to question the claim of the assignees to that fund, by his unqualified assent to the account being taken. The decree was that the defendant, *John B. Murray*, account with the assignees for the sum adjudged to be due from him ; and a settlement afterwards between him and the assignees was clearly binding upon the present plaintiff. There would be no certainty or safety to parties, and no end to litigation, if one of the defendants, after hearing his demurrer overruled, and after giving his assent to a reference to take the account in the cause, could withdraw himself from the further assertion of his claim, and suffer the suit to terminate, and then be permitted to reassert the same claim in a collateral action. A decree can never be impeached by an original bill, or in another suit.

2. The plaintiff's claim against the executors of *Clark* is not resisted upon the same ground ; for here the plaintiff was no party to any of the rules or orders, under which the suit of the assignees against the executors, in respect to the partnership moneys, chargeable upon the estate of *Clark*, was finally and amicably settled. And here the general question occurs, whether the assignees of the bankrupt partners had

not competent power to receive partnership funds, and discharge partnership debtors, even without the assent of the remaining solvent partner. If this point should be decided in the affirmative, it would equally protect the defendant, *J. B. Murray*, in his settlement with the assignees, without having recourse to the plaintiff's assent, or the decision in the other suit.

The assignees of a bankrupt partner, under a separate commission, are tenants in common with the solvent partner, and one cannot call the joint property out of the hands of the other.

The solvent partner, and the assignees of the bankrupt, must all join in a suit at law.

It is admitted, in all the cases, that the assignees of a bankrupt partner, and the remaining solvent partner, are tenants in common in respect to the partnership funds ; and, like all tenants in common, one party cannot call the joint property out of the hands of the other. There is no such case. They are entitled equally to the possession in law. This was expressly held in *Smith* v. *Stokes.* (1 *East*, 363.) Trover will not lie for one against the other. It has, also, been held, that the solvent partner and the assignees of the bankrupt cannot sue alone, and that they must unite in actions at law. (*Ashhurst, J.* in *Graham* v. *Robertson*, 2 *Term*, 282. *Eckhardt* v. *Wilson*, 8 *Term*, 140.) What right, then, has the solvent partner to come into this Court, to call the entire joint funds out of the possession of the assignees, who are his co-tenants in common, and as such, have an equal control over the joint fund? There is no case giving to either party the absolute, exclusive possession and distribution of the entire effects. Neither party is strictly entitled, as against the other, to any thing more than his share of the surplus, after the partnership debts are paid. (*Field* v. *Taylor*, 4 *Vesey*, 396.)

The solvent partner is entitled, as against the other, to no more than his share of the *surplus*, after the partnership debts are paid.

In this case, there is no justice or equity in the pretension of the plaintiff. He admits that the partnership debts greatly exceed the partnership funds, and that there cannot be any surplus coming to either party. His sole object then is, to have the partnership funds, which have been or may be under the control of the assignees, pass into his hands, for distribution, instead of having them distributed by the assignees ; and he denies all right in the assignees to touch or distribute

any of the partnership funds, and wishes to vacate all that they have done. But it appears that a great majority in interest of the joint creditors, and who have partnership debts due them to nearly 500,000 dollars, have come in and proved their debts under the separate commission in the case of *Robert Murray.* These include almost all the debts, except such as were provided for under the assignments to *J. B. Murray* and *Clark.* It also appears that the assignees, after having by suit obtained a liquidation of the balance due from the estate of *Clark,* and bestowed great care and efforts towards the recovery and security of that debt, settled it upon terms which they deemed prudent and just, under all the circumstances. This settlement and consequent discharge of the estate of *Clark* was in *February,* 1810; and in *October* following, due public notice having been given to the creditors, several of them appeared before the Commissioners of Bankrupts, and ratified that settlement. If there was any thing wrong in the settlement, it was for the creditors to disturb it, and it would be most unreasonable to permit the plaintiff to set aside all that had been done by the assignees under such a sanction from the creditors, merely for the purpose of making his own distribution. There is no charge of misconduct in the assignees. The whole bill is a denial of their competency to act, though every case on the subject admits that assignees of a bankrupt partner are tenants in common with the solvent partner. If the pretensions of either party to an exclusive distribution of the partnership funds, were to be examined upon principles of policy and equity, the assignees would have the better pretension, in the view of this Court, because the solvent partner has it in his power to give preferences, and defeat the equality and equity of the bankrupt system. Assignees, on the other hand, are bound to make a rateable distribution of the assets ; and, being trustees under the control of this Court, there is no good reason why their equal rights at law, as

tenants in common, should suffer diminution here. They
are tenants in common, but with *particular equities in them*,
as Lord *Eldon* observed, " vastly beyond what tenants in
common have where no bankruptcy has occurred ;" and
their claim to the distribution of the partnership fund has
been encouraged and strengthened by the decisions in Chan-
cery. This will appear by a review of some of the leading
Chancery cases.

It was well established in the time of Lord *Hardwicke*,
that joint creditors could come in and prove their debts, un-
der a separate commission of bankruptcy, against one part-
ner, for the purpose of assenting to, or dissenting from, the
certificate of discharge to the bankrupt. They were not
allowed to come in and prove, for the purpose of receiving
dividends with the separate creditors ; and they were put to
the necessity of filing a bill, and bringing before the Court
the assignees of the bankrupt and the solvent partners, and
having the account of the joint estate taken in their presence.
The principle was, that the joint creditors had a preferable
claim upon the joint effects, and the separate creditors upon
the separate estate ; and, therefore, the joint creditors could
not come in upon the separate estate, until all the separate
creditors were paid ; and this was upon a plain rule of
equity, that he who has two funds to resort to, shall not
satisfy his debt out of that one of them to which another
creditor can only resort, until he has exhausted the other
fund.

This more ancient doctrine recognized, of course, the equal
right of the assignees to the distribution of the joint fund,
and the right of the joint creditors to come in under the
cover of the separate commission. It only interfered with
the application of the joint fund, by marshalling the joint
and separate assets equitably between the joint and separate
creditors. Indeed, the right of a joint creditor to come in
and prove his debt and take his dividend, under a separate
commission, is a clear legal right ; for a joint creditor is still

a creditor of the bankrupt, and all the control that equity exercises over this right, is merely to marshal the funds upon equitable principles.

There is nothing, even upon the ancient doctrine in Chancery, that gives to the solvent partner any paramount rights over his co-tenants, the assignees, and, especially, a right to annul their acts, and call them to an account for all the joint funds in their possession.

It was determined, in the case *ex parte Crisp*, (1 *Atk.* 133. *Willes' Rep.* 67. *S. C.*) both by Lord *Hardwicke* and by the Court of *K. B.*, that a separate commission of bankruptcy might issue against one partner for a joint debt, upon the petition of a joint creditor. And the Ch. J. of the *Common Pleas*, in giving the opinion of the Court, said, that under a separate commission against one partner, the bankrupt's share of the partnership effects might be taken and sold, making satisfaction for the partnership debts, if joint creditors elected to come in under the separate commission, " as they generally have." The certificate, under the separate commission, was a discharge from the partnership, as well as the separate debts, because the partnership creditors might come in and prove their debts.

This decision considered a commission as an execution, and not as an action; but Lord *Eldon*, in *ex parte Brown* and *ex parte Munton*, (1 *Ves. & Bea.* 60.) admitted there was a difficulty in considering a commission of bankruptcy as an execution, in a strict sense; and that there was a difficulty also in respect to the other partners, in allowing a separate commission to issue upon a joint debt.

Lord *Thurlow*, after much consideration and consultation with the judges, adopted a different course on this subject, and allowed the joint creditors not only to come in under a separate commission and prove their debts, but as a matter of right, to take dividends upon the separate estate; and

*1821.*

*MURRAY*
*v.*
*MURRAY.*

*The rule in England, in cases of the bankruptcy of joint traders, seems to be, that joint creditors may prove their debts under a separate commission, and separate creditors under a joint commission; but distinct accounts are kept of the joint and separate estates, and the joint estate is first appli d to pay the partnership debts, and the separate estate to the separate creditors; and the surplus of each estate to the creditors remaining on the other.*

he held a commission of bankruptcy to be an execution for all the creditors.

Lord *Loughborough* again departed from the rule adopted by Lord *Thurlow*, and restored the principle, though not the entire practice of Lord *Hardwicke.* He directed the assignees under a separate commission, to take an account of the joint estate, and applying that to the discharge of the joint creditors, to ascertain the shares of the residue belonging to the bankrupt and to the solvent partners. He adopted the reasonable practice of marshalling the dividends, and compelling the joint creditor to exhaust the joint fund, before he exercised his legal right of proving his debt, and taking his dividends out of the separate fund. The case *ex parte Elton,* (3 *Vesey,* 238.) contains, at large, the able discussion, and lucid principles of Lord *Loughborough.* He allowed the partnership creditor to prove his debt under the separate commission, and that his dividend should be set apart, and allotted to him out of the separate fund, but not paid until an account had been previously taken of the joint fund, and it had been ascertained how far his debt could be satisfied out of it. He said, that the joint creditor ought to be admitted to prove his debt under a separate commission, for the purpose of assenting to, or dissenting from, the certificate, and for receiving such surplus, beyond the amount of the separate debts, as joint creditors would be entitled to, if there were two commissions. The Court ought not to allow a joint creditor, who has two funds, to attach himself upon one fund, to the prejudice of those who have no other, and to neglect the other fund. A separate creditor cannot take a dividend upon the joint estate, rateable with the joint creditors, for at law he can only attach the interest of his debtor in that property. It is a settled rule in equity, that the joint estate was to be first applied to partnership debts, and the separate estate to the separate debts ; and if the joint creditor was admitted, by an order in bankruptcy, to receive a

1821.

MURRAY
v.
MURRAY.

dividend from the separate estate, the order, as he observed, would carry a chancery suit in the bosom of it. The assignees would be compelled to file a bill on behalf of the separate creditors, in order to restrain the dividend, and compel a contribution from the other parties, and to make them discover and apply the partnership fund, in order to throw the joint creditors upon it, and prevent the separate estate from being exhausted. The plain rule of distribution is, that each estate shall bear its own debts, and the usual directions in bankruptcy are to apply the funds distributively, the joint estate to the joint debts, the separate estate to the separate debts, and the surplus of each to come in reciprocally to the creditors remaining upon the other. The Lord Chancellor, accordingly, in that case, and in pursuance of this reasoning, admitted the joint creditor to prove, but not to receive, a dividend. He directed that to be reserved, until an account should be taken of what the joint creditors might receive from the partnership effects.

The same rule and practice were followed in *ex parte Abell.* (4 *Vesey*, 837.) The joint creditors were not allowed to take a dividend under the separate commission, until the separate creditors were paid.

Lord *Eldon* pursued the rule and practice of his immediate predecessor, Lord *Loughborough*, without presuming to say which was the best rule, that or the one of Lord *Thurlow*. In the case *ex parte Clay* (6 *Vesey*, 813.) and in two cases cited in a note to that case, Lord *Eldon* admitted the joint creditor to prove, for the purpose of keeping separate accounts, and assenting to, or dissenting from, the certificate, but not to receive dividends, in the first instance, with the separate creditors. In *ex parte Chandler*, (9 *Vesey*, 35.) a separate commission was sued out on the petition of a joint creditor, and the first creditors were permitted to prove, for the purpose of voting for assignees and *taking dividends*, provided they would pay the separate creditors.

The doctrine, afterwards, laid down in *Barker* v. *Goodair*, (11 *Vesey*, 78.) is quite decisive upon the question in this

case, because. it not only, like every case on the subject, ad-
mits the equal right of the assignees or tenants in common,
to the joint fund, but it gives to the assignees higher equi-
ties than belong to ordinary tenants in common.    Being
exposed to the claims of the joint and separate creditors,
they have an equity which the solvent partner has not ;
that is, to compel a contribution from the joint fund.   Sir
S. Romilly, in that case, observed, arguendo, that the assign-
ees, as against the solvent partner, had a lien upon the whole
property, until all the accounts were wound up, notwith-
standing the tenancy in common.    The Lord Chancellor
said, that they had equities beyond what mere tenants in
common had, and in the absence of the solvent partner, they
could take the joint property, and pay all the joint creditors
equally, and apply the surplus under all the equities subsist-
ing between the partners.   This, he said, was done every
day.   Lord Kenyon, in Smith v. Stokes, (1 East, 369.) had
already stated another case, in which the assignees of a bank-
rupt partner were to take the whole property and sell it,
and account to the solvent partner for his share.   This was
where the property was left in the possession of the bank-
rupt partner at the time of his bankruptcy.

The rule which Lord Eldon declared to be settled in ex
parte Martin, (15 Vesey, 114.) and ex parte Crew, (16 Ve-
sey, 236. ; and see 475, 476 ) goes strongly to show, that
assignees under a separate commission can now distribute
the whole partnership fund, for after a separate commission,
a joint commission cannot issue; nor, on the other hand, can
a separate commission issue after a joint commission.   Joint
and separate commissions cannot stand together, as they
were permitted to do in the time of Lord Hardwicke.   Now,
by arrangement, one or the other is superseded, as may best
answer the ends of justice.   If the separate commission first
issued, or by the arrangement, was permitted to stand, even
if there was a joint commission, it would seem necessarily

In England,
the assignees
under a sepa-
rate commis-
sion of bank-
rupt, can distri-
bute the whole
partnership
fund ; for after
a separate com-
mission a joint
commission
cannot issue,
and vice versa.
And where both
are , such, one
or the other is
superseded, as
may best an-
swer the ends
of justice.

to follow, that it must draw to it the distribution of the whole joint fund, after it had been marshalled upon the principles prevailing in equity.

It is said, again, in the case *ex parte Taitt*, (16 *Vesey*, 193.) that Lord *Loughborough* repeatedly made the order which Lord *Eldon* has followed, that the account of the joint estate should be taken under the separate commission, and that the assignees should keep distinct accounts, and distribute the joint estate among the joint creditors, and the separate estate among the separate creditors. But the difficulty was, that the account was taken in the absence of the other parties, and though Lord *Eldon* continued to follow the practice, established by Lord *Loughborough*, yet he was evidently not satisfied with it; and I should rather apprehend he preferred the rule of Lord *Thurlow*, allowing the joint creditors to come in fully and take their rateable dividends, and leave it to the assignees to bring the solvent partner into Chancery, and have the account of the joint estate taken in his presence, and contribution decreed. He observed, afterwards, in *Dutton* v. *Morrison*, (17 *Vesey* 191. and see also *ex parte Carlson*, 18 *Vesey* 439.) that he had continued to follow the practice of his predecessor, and under a separate commission, where the other partners were solvent, *he had directed an account of the joint estate to be taken*, in the absence even of the other partners; and upon the application of any one joint creditor, the order was, that the joint creditors were to be paid *pari passu*, out of 'the joint estate, and the residue to be distributed according to the respective interests of the partners. They were likewise entitled to their rateable proportions, (if requisite to satisfy their debts,) of the surplus of the separate estate.

Upon this review of the cases, I am not able to perceive any colourable reason for the pretension set up by the plaintiff, to the exclusive distribution of the partnership funds. There would be much more ground, upon the established doctrines of equity, for an exclusive right of distri-

bution on the part of the assignees, since under their com-
mission, the Court is in the practice of directing an ac-
count of the joint estate to be taken, and a distribution of
that estate rateably among the joint creditors.   The most
that can be said is, that the solvent partner, upon the disso-
lution of the partnership by bankruptcy, being a tenant in
common, may retain and distribute the funds in his pos-
session, and may, as was held in  *Fox* v. *Hanbury*, (*Cowp.*
445.) sell those partnership effects, for a valuable consider-
ation and without fraud.    They cannot be called out of his
possession by his co tenants, the assignees, unless under the
direction of this Court, on a bill filed by them for contri-
bution, or, perhaps, where an account of the joint fund is
directed to be taken in bankruptcy.   But on the other
hand, there is no foundation in law or equity, for the sol-
vent partner to call to account, either the partnership debt-
ors who have *bona fide* settled with the assignees, or the
assignees themselves, for the funds in their possession.  They
hold those funds by an equal title in law, with him, as
tenants in common, and by a superior equitable title, as
trustees, charged with the payment of both the joint and
separate debts.

Decree.

I shall accordingly declare, that the plaintiff has no
right or title in law or equity, to call the assignees to ac-
count for the partnership funds, which have been or are
now in their possession as such assignees, in order to obtain,
by decree, the possession of those funds for distribution
among the creditors of *Robert Murray & Co.*, inasmuch, as
those assignees have an equal right and title in law, as ten-
ants in common with the plaintiff, and a better right in
equity to the possession of those funds for the same purpose
of distribution.    And further, that the plaintiff has no right
to annul or set aside the settlements made by the defendant
*John B. Murray*, as one of the debtors to the house of
*Robert Murray & Co.*, with the said assignees, and by the
defendants *Oliver Kane* and *Ephraim Bowen*, jun., as ex-

ecutors of *John Innis Clark* deceased, also, one of the debtors to the house of *Robert Murray & Co.*, with the said assignees, in order to obtain possession of what was due from those debtors respectively, for the purpose of distribution, inasmuch as those assignees had competent power to make those settlements, and to obtain possession of what was due and coming upon those settlements, for the like purpose of distribution. And I shall direct the original bill, and bill of revivor and supplement, to be dismissed, but without costs, considering the special circumstances of the case, and the importance of the points investigated and discussed.