## Case No. 681.

### AYER v. ADAMS.

[Nowhere reported; opinion not now accessible.]

## Case No. 682.

### AYER v. BRASTOW.

[5 Law Rep. 498.]

District Court, D. Maine. Dec. 30, 1842.

BANKRUPTCY—INSOLVENCY OF PARTNER AND PARTNERSHIP.

1. In a separate bankruptcy of one member of a partnership, if the firm or the other partners are solvent, the court will ordinarily order an account to be taken, and will leave the joint property in the possession of the solvent partners.

[Cited in Amsinck v. Bean, 22 Wall. (89 U. S.) 403.]

2. But where the partnership is insolvent and also all the partners, although some may not be in bankruptcy, the rule is reversed and the court will ordinarily order the joint property to be placed in the hands of the assignee of the bankrupt partner to be administered in bankruptcy.

[Cited in Forsaith v. Merritt, Case No. 4,-946; Re Leland, Id. 8,228; Amsinck v. Bean, 22 Wall. (89 U. S.) 403; Wilkins v. Davis, Case No. 17,664.]

In bankruptcy. This was a petition by the assignee of the estate of Samuel Thurston, a voluntary petitioner in bankruptcy, who was declared a bankrupt in his private capacity and also as partner in the late firm of Thurston & Brastow, April 19, 1842. The petition alleges that the firm is insolvent and also that Brastow, the other partner, is insolvent; that the books and papers of the firm are in the hands of Brastow, and that he refuses to surrender them to the assignee, and concludes with a prayer that the court will thereupon pass such order as it may deem proper in the case. Brastow on notice appeared and put in an answer to the petition. The answer admits that in April, 1834, he entered into copartnership with Thurston, and that the copartnership then formed has not been dissolved but by the proceedings in bankruptcy; that in the summer of 1837, the firm suspended payment and has since remained insolvent. That at the time of the suspension of payment, the firm owed more than $50,000, and that he then undertook the settlement of the demands and has continued his efforts to the present time, but has never had the assistance of his partner, but that Thurston has, in all cases, assented to what he has done; that he has settled by payment or compromise, debts to the amount of twenty-five or thirty thousand dollars, and that he still is engaged in the business of settling the affairs of the firm, and that for this purpose it is necessary that the books and papers of the firm should be retained by him; that he is ready to co-operate and advise with the assignee of said Thurston in all his negotiations for this purpose, and concludes with a prayer that he may be per-

mitted to retain the books of account and the papers of the firm for the purpose of closing the concern.

WARE, District Judge. This case has been submitted to the decision of the court, on the facts stated in the petition of the assignee and the answer of the partner without argument. As the matter submitted involves questions of some difficulty and delicacy, and of no inconsiderable importance, it would have been more satisfactory to me to have had the benefit of an argument before deciding them. But as the parties have chosen to submit them without, I will proceed now to state some of the conclusions to which I have arrived, on such an examination of the question, and as I have been able to give them. In the first place, when all the partners are jointly in bankruptcy, either on their own voluntary petition or on adverse proceedings by their creditors, all the joint property of the firm, and all the separate property of each of the partners passes to the assignee. This is expressly provided for by the 14th section of the act, and necessarily results from the general principle that a person cannot go into bankruptcy by halves. He cannot be a bankrupt as partner, and not a bankrupt as an individual, and being so in both capacities, his creditors have no mode of reaching his joint and separate property but by proceedings in bankruptcy. In the separate bankruptcy of one of the partners, all his separate property passes to his assignee with the same power over it that he had, that is, the exclusive right to the possession, and the exclusive right of disposing of it. But of the joint property, all that passes to the assignee is the interest, which the bankrupt had in it, subject to the rights of the other partners. The solvent partners have a lien on the partnership assets for the payment of the partnership debts, and also, for their share of the surplus. What passes to the assignee, then, is the interest which the bankrupt may appear to have on taking an account. But the interest of the bankrupt does not pass to his assignee with precisely the same powers over the property which the bankrupt himself had. Before the bankruptcy, his power over it was that of a partner; it was a joint tenancy. A joint tenant of a chattel has, it is said, the power of disposing of the whole, (3 Kent, Comm. 350,) though it is otherwise of real estate. But, however it may be as a general rule, it is certain that in the particular modification of joint tenancy existing in partnership, a joint tenant has this power, whether it be considered as legally incident to the quality of his title, or to his being the authorized agent or praepositus of the partnership for their purpose. But by the bankruptcy, the partnership is dissolved, and the joint tenancy severed. The assignee succeeds to the right of the bankrupt, not as a partner, but as a tenant in common. Though

he succeeds to all the beneficial interest of the bankrupt, it will not necessarily follow that he succeeds to all his rights of disposing of the property.

Between tenants in common of chattels each has an equal right to the possession, and therefore one tenant in common cannot maintain trespass or trover against his co-tenant for dispossessing him. If one tenant in common takes all the chattels personal, the other has no remedy by action, but he must wait and may take them when he can see his time. Litt. Ten. § 323; 2 Co. Litt. 200. The tenant in possession may therefore legally retain the possession, for he has an equal right with the other, though if he loses or destroys the thing, an action will lie for the co-tenant; and so also if he sells it; but this must be on the assumption that his co-tenant affirms the sale, for as a general rule, a tenant in common can sell only his own share. 3 Kent, Comm. 350, note. But in the case of a tenancy in common, supervening on a joint tenancy in partnership on its dissolution, by the bankruptcy of one of the partners, the principles of the law seem to be somewhat modified. The moral person constituted by the articles of partnership is extinct for general purposes, but it seems has a modified existence for certain objects, and with limited faculties. The partnership is said to be continued for the purpose of winding up the concern, but not for engaging in any new enterprise. The solvent partner, remaining in possession of the partnership effects, has the power of disposing of them and applying the proceeds to the discharge of the partnership obligations. When he sells he conveys a good title to the whole thing sold, and not merely his own interest. Coll. Partn. 497. For this purpose he is the representative and administrator of the moral or civil person which was the creature of the partnership articles. But it seems that he is not the agent or representative of the partnership for all purposes even of winding up and closing the business. He cannot negotiate a bill of exchange or promissory note so as to bind the firm. Coll. Partn. 497. And in suits for the recovery of debts due to the firm, he cannot maintain an action in his own name or that of the partnership alone but must unite the assignee of the bankrupt partner. Story, Partn. § 362. But he remains the representative or administrator of the firm for the purpose of disposing of the partnership effects. And it seems that he has generally a right to retain the control and possession of them, until an account is taken, for the purpose of applying them in good faith to the discharge of the joint debts, and for his share of the surplus. Story, Partn. §§ 839, 407; 3 Kent, Comm. 59. Such being the right of the solvent partner, what are those of the assignee of the bankrupt, and to what extent may he deal with the partnership effects? It is stated generally that he succeeds to all the interest and

rights of the bankrupt. These, after the dissolution of the partnership, are the rights of a tenant in common, and of that particular species of tenancy, which results from the dissolution of a partnership. In the absence of any particular agreement, each partner has an equal right to the possession of the effects, to dispose of and apply them to the discharge of the partnership liabilities. The assignee succeeding to all the rights of the partner, must have the same right of possession and of administering the effects as the solvent partner. This seems to be the necessary result of acknowledged principles, and so the doctrine is clearly stated by Chancellor Kent, in Murray v. Murray, 5 Johns. Ch. 60. In that case, it was contended by counsel that there are only two cases in which the assignee, under a separate commission, has a right to deal with the joint property; one, where the solvent partner is abroad. Barker v. Goodair, 11 Ves. 86, and the other where the property left at the time of the bankruptcy is in the possession of the bankrupt partner. Smith v. Stokes, 1 East, 367. But the court ruled that the assignee, as tenant in common, had an equal right to the possession and control of the assets with the solvent partner; that neither party had any absolute and exclusive right to the possession and distribution, and that the assignee, having obtained possession, had a right to retain the assets for the purpose of converting them into money and distributing it among those who are entitled to the proceeds. The legal rights of the solvent partner against the assignee in possession, would appear to be the same as that of the assignee against the solvent partner in possession; that is, to an account and to his share of the surplus after the payment of the joint debts. Such appear to be the rights of the parties in the case of a separate bankruptcy of one partner, when the other is solvent. The assignee of the bankrupt has an equal title to the control and administration of the joint effects with the solvent partner. If the effects are in the hands of the partner, the court will ordinarily direct an account to be taken, to ascertain the interest which the bankrupt has in the joint estate, and will not take the effects out of the solvent partner's possession, unless some equitable ground is shown, which requires such a proceeding to protect the rights of those who have an interest in the estate.

The question in this case is, what course should be adopted where the non-bankrupt partner is insolvent. The proceedings in bankruptcy are according to the course of equity, and to enable the court to do full justice to all partners in interest, the district court, sitting as a court of bankruptcy, is clothed with all the powers of a court of general equity jurisdiction. When the partnership and all the partners are insolvent, though not all in bankruptcy, the natural and obvious view, which a court of equity takes of the matter, is that the effects of the firm belong not to any of the partners but to the creditors. They have a right to look to all the partners for the payment of their debts, and they have the same right to seek their remedies through the assignee as the administrator of a bankrupt partner, as they have against any of the other partners. By the common law, the assignee has no better title to the possession and administration of the effects than the other partners. But in equity he would seem to have a superior claim. For he has an equal legal title as succeeding to the rights of the bankrupt, and he has a superior equity as being the proper representative of all the creditors, who in justice have the sole right to the property. It may be further observed, that the assignee administers and distributes the estate under the law, giving to each creditor his equal share. And this equality, which is the dictate of natural equity, when the estate is brought into bankruptcy, is expressly provided for by law. But if the effects are left in the hands of the insolvent partner, as his administration is not under the immediate control of the court, he has it in his power to defeat the policy of the bankrupt law by giving preferences. In this case, the respondent states in his answer, that he has settled, by payment or compromise, one half or more of the whole debts of the firm; that is, the effects of the firm thus far have been appropriated to the payment of one half of the creditors, while the other half have received nothing. Now one great object of the bankrupt law, is to prevent this preference of favored creditors, and to give to all an equal share of the estate in proportion to the amount of their demands. Another very obvious reason for preferring the administration of the assignee is found in the fact itself that the partner is insolvent. The creditors, among whom the property is to be distributed, have a just claim to have the effects placed in security for the purpose of being converted into money for their benefit. As a general rule, it cannot be doubted that the administration will be more safe in the hands of an assignee than in those of an insolvent partner. Has then the court the power of taking the effects out of the possession of the insolvent partner and placing them in the hands of the assignee. As a general question, this I suppose does not admit of doubt. The partnership is dissolved by the bankruptcy; and on a dissolution by bankruptcy or otherwise, any of the partners or the representatives of a partner may insist on having the whole concern wound up by a sale. Story, Partn. §§ 350, 351; 3 Kent, Comm. 64; Coll. Partn. bk. 1, c. 3, § 3; Crawshay v. Collins, 15 Ves. 227; Featherstonhaugh v. Fenwick, 17 Ves. 298. This when done on application to a court of equity, can be done only by the court's taking the control of the property into its own hands. This is

the general rule, although the court will not perhaps always order a sale when it will be injurious to the estate. Crawshay v. Collins, 2 Russ. 325; 3 Cond. Eng. Ch. 136. Even while the partnership is existing, if one of the partners has involved the firm in debt or has become insolvent, the court will restrain him by injunction from negotiating the partnership paper and from contracting or receiving partnership debts; and where a dissolution is intended or has taken place, will, on application of a partner in a proper case, appoint a receiver. Story, Partn. §§ 227, 228; Coll. Partn. bk. 1, c. 3, §§ 5, 6, pp. 189, 197, 198. There can then be no doubt of the power of the court to take the control and administration of the effects into its own hands. On the separate bankruptcy of one partner, if the firm, or if the other partners are solvent, the general rule in equity, as I understand it, is that the court will not take the joint effects out of the hands of the solvent partners, but leave the possession and distribution with them, subject of course to be controlled by the court when equity requires it, unless when a sale is demanded, or when some special ground is shown requiring the interposition of the court. But where the firm itself and all the partners are insolvent, the interest of the creditors and the policy of the law require that the rule should be reversed, and that the administration of the assets should be by the assignee or a receiver under the direction of the court, and the distribution be made by the law. The court may indeed, in special cases, employ the insolvent partner to aid in the settlement of the estate, but he then will act under the authority and direction of the court. And this I understand to be the practice in equity.