HUGHES, District Judge, declined to give any of these instructions in the form in which they were asked for. He said:

A policy of insurance could only be kept alive in general by the payment in advance, at the beginning of each year insured for, of the annual premium. That the payment in advance of the premium was an essential element of an insurance contract. That on a failure to make this payment at the beginning of any year, the policy lapsed by its very terms. That the policy now sued upon provided that it might be renewed after default, if the premium should be paid within thirty days after the beginning of each year. But it must be borne in mind that the policy lapsed at the beginning of the new year, after default, and that payment within thirty days but renewed what had expired. The agreement in this case to accept quarterly instalments only changed the times and amounts of the payments, not the nature of the transaction. If the annual payment was not made by the beginning of each new year the policy lapsed. The payment in advance of a quarterly instalment of this premium only operated to revive and renew for the ensuing three months what had lapsed and expired. If, therefore, any quarterly payment was shown not to have been made, then the policy had not been revived, had not been renewed, and there could be no recovery.

The judge then instructed the jury as follows: "There are two questions upon which the jury are to pass in this trial, namely: First, whether the premium due the 10th October, 1877, was paid; and, if it was not paid, second, whether Winindger's neglect and failure to pay it before his mortal illness was caused by the defendant, or its agent, Mr. Griffith, inducing him to believe that he might neglect to do so to the extent that he actually did neglect it, without losing the benefit of his policy. The court accordingly gives the following instructions: 1st. If the jury believe, from the evidence, that Winindger did not pay the October quarterly instalment of the premium, then they must find for the defendant; unless, 2nd. They believe, from the evidence, that Winindger's neglect to pay it was induced by the conduct of the defendant or Mr. Griffith; and if they believe that his failure to pay was so induced, they must find for the plaintiff. 3rd. The court also instructs the jury that a tender of a past-due premium for or by the insured during his mortal illness, does not of itself save a policy otherwise forfeited."

The jury then retired to their room, and after a deliberation of about twenty minutes brought in the following verdict: "We the jury find for the plaintiffs, and assess their damages at $2,000, with interest thereupon at six per cent. from April 13th, 1878."

Mr. Walke entered a motion to set aside the verdict as contrary to the law and the evidence, and both counsel agreed to submit the motion to the court without argument. The court accordingly took the motion under advisement.

On a later day in the term the verdict was set aside, and a new trial ordered. The case was afterwards compromised.

---

WINISIMMET CO. (LENOX v.).  See Case No. 8,248.

---

## Case No. 17,875.

### In re WINKENS.

[2 N. B. R. 349 (Quarto, 113); 1 Chi. Leg. News, 163; 2 Am. Law T. Bankr. 53.] [1]

District Court, S. D. New York.  Jan. 16, 1869.

BANKRUPTCY OF PARTNER—DISCHARGE FROM FIRM LIABILITIES.

Where a member of an existing firm has filed an individual petition in bankruptcy where there are firm debts and firm assets, the firm must be declared bankrupt before a member thereof can be discharged from its liabilities. This applies only to copartnerships actually existing, or where there are assets belonging to the firm.

[Cited in Re Stevens, Case No. 13,393; Re Webb, Id. 17,317; Wilkins v. Davis, Id. 17,664.]

I, James F. Dwight, register of said court in bankruptcy, do hereby certify that in the course of the proceedings in this cause, the following question arose pertinent to said proceedings, and is submitted to the district judge for his decision under provisions of the act [of 1867; 14 Stat. 517]:

On the 31st day of December, 1868, Daniel Winkens, of New York City, filed in the court his petition to be adjudicated a bankrupt and discharged from his debts. Attached to the petition were Schedules A and B, as provided for by the bankrupt act. The petition was in form No. 1, established by the supreme court; and petition and schedule were correct in form. The matter was duly referred to me, as register, to make adjudication in bankruptcy, and to take such other proceedings as are required by the act. On the return day of the order of reference, January 6th, 1869, the bankrupt appeared by his attorney, and filed a certified copy of his petition and schedules, as directed in said order. On an examination of said Schedule A, it appears that the petitioner owes debts, both individually and as a member of the firm of Thomas & Co., and as a member of the firm of Daniel Winkens' Nephew. And that it appeared by an examination of said Schedule B, that among the assets set forth, is the individual property of the petitioner, certain claims and debts due the firm of Thomas & Co., and certain property of the firm of Daniel Winkens' Nephew; which firm of Thomas & Co. was composed of John J. Thomas and this petitioner, and became insolvent in March, 1868, and his property has been put in the hands of a receiver. And the firm of Dan-

---

[1] [Reprinted from 2 N. B. R. 349 (Quarto, 113), by permission. 2 Am. Law T. Bankr. 53, and 1 Chi. Leg. News, 163, contain only partial reports.]

iel Winkens' Nephew was composed of the petitioner and Charles Marquandt, and was engaged in business at the time of filing the petition. (Charles Marquandt is also petitioner for adjudication in a separate proceeding pending before me.) Upon which facts the register declines to make adjudication in bankruptcy of the petitioner, until his co-partners in the firms referred to are brought into the proceedings, under the provisions of the thirty-sixth section of the act, and rule 18 of the supreme court. To this decision the bankrupt excepts, and prays that the question may be certified to the district judge, that his opinion may be had on the question, as to whether the register erred in declining to make adjudication against the petitioner, as prayed for; which prayer is granted, and this certificate made in accordance thereto.

### Opinion.

I do not think that the petitioner is entitled to be adjudged a bankrupt or discharged in these proceedings, unless his co-partners are joined with him. He shows debts jointly with co-partners in two firms, and assets, the property of the same firms, but the co-partners in neither of these firms are parties to these proceedings, or sought to be brought in under the provisions of section 36 of the law, or rule 18, which provides for the bankruptcy of co-partnerships. He seeks a discharge from his debts due as a member of firms, that he does not ask to be adjudged bankrupt, and offers to pay his individual as well as co-partnership debts, with firm property, the members of which firms are not joined. I understand the law to be that, when there are firm debts and firm assets, the firm must be declared bankrupt (by either voluntary or involuntary proceedings) before any member of the firm can be discharged from its liabilities; and that this applies only to co-partnerships actually existing, or where there are assets belonging to the firm, and not to co-partnerships terminated heretofore by bankruptcy, insolvency, assignment, or otherwise. In the case of In re Little [Case No. 8,390], where I certified a question to the court, February 29, 1868, a decision is given on this point; and as I am aware that some misapprehension and uncertainty exists in the profession as to the effect of the decision in. Little's Case, I would respectfully suggest to the court that this occasion be taken advantage of to definitely settle the law and practice in cases of petitions where firms are concerned.

Which facts and opinion are respectfully submitted this 15th day of January, 1869.

BLATCHFORD, District Judge. The register has stated, in his opinion, with accuracy and conciseness, the law on the subject referred to, as held by this court, and applied by it in repeated cases. His decision in the present case is correct.

WINKLEY (ODIORNE v.). See Case No. 10,432.

---

## Case No. 17,876.

### In re WINN.

[1 N. B. R. 499 (Quarto, 131);[1] 1 Am. Law T. Rep. Bankr. 17.]

District Court, N. D. Georgia. Dec. 24, 1867.

BANKRUPTCY PROCEEDING — CLAIM OF LIEN CREDITOR.

1. A prior lien gives a prior claim, and the district court may ascertain and liquidate such a lien.

[Cited in Re Erwin, Case No. 4,524.]

2. The creditor who has a lien on property for the payment of his debt is admitted as a creditor only for the balance of the debt after deducting the value of such property.

[Cited in Re Hambright, Case No. 5,973; Re Bloss, Id. 1,562; Re Stansell, Id. 13,293.]

[In the matter of Elijah E. Winn, a bankrupt.]

In this case the following questions arose in the proceedings of the same, and upon request of James R. Hanks, a judgment creditor, were certified by the register, Lawson Black, for the opinion of the district judge. First. Does a debt secured by lien lose its lien by proof of the debtor? Second. Does a judgment in this state retain its lien in bankruptcy? Third. If a judgment is older than a mortgage, out of what fund shall it be satisfied?

My opinion is that the district court in bankruptcy is a court of equity, and that it is a court of original jurisdiction in matters of bankruptcy. The bankrupt is the complainant in equity, and each one of his creditors are defendants in the bill, and the court having original equity jurisdiction over all the parties and the subject matter of the suit, may pass any order, or decree in the case, it thinks proper for the purpose of doing equity between all the parties to the suit, either on the parties to the suit, or in relation to the subject matter of the suit, and that said orders and decrees so passed cannot be set aside nor inquired into in any other court, and that they are final and conclusive upon the parties and the subject matter of the suit, unless they are carried up in the manner prescribed in the bankrupt act. And any person disobeying the order or decree of the court, is liable to be punished for a contempt of the court. When a debtor is adjudged a bankrupt, all proceedings in a state court against him must stop, if the subject matter of the suit can be proven against his estate in bankruptcy, and no creditor, who holds a claim against the estate of the bankrupt, which might be proven in bankruptcy, whether the debt is secured by lien or not, can enforce such debt in a state court, except by the per-

---

[1] [Reprinted from 1 N. B. R. 499 (Quarto, 131), by permission.]