WILKINS (BALFOUR v.). See Case No. 807.

WILKINS (BINGHAM v.). See Case No. 1,416.

---

## Case No. 17,664.

### WILKINS v. DAVIS.

[2 Lowell. 511: [1] 15 N. B. R. 60.]

District Court, D. Massachusetts. Nov. 13, 1876.

BANKRUPTCY — DISCHARGE OF PARTNER — JOINT AND SEPARATE DEBTS — PROOF OF DEBTS — LIABILITY OF SOLVENT PARTNER — LIMITED PARTNERSHIPS.

1. If a member of a firm obtains his discharge in bankruptcy, he is released from liability for his joint as well as his separate debts.

2. The partners of the bankrupt are bound by the discharge as well as the joint creditors.

3. A joint creditor may prove against the separate estate of the bankrupt, and may vote for assignee, examine the debtor, and object to his discharge. He cannot compete with the separate creditors in the distribution of separate assets, but will receive dividends from any joint assets

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

which the assignee may obtain, and from any surplus of the separate assets after the separate debts are paid.

[Cited in Re Webb, Case No. 17,317; Re Brick, 4 Fed. 806.]

4. The bankruptcy of one partner. ipso facto, dissolves the partnership, and the assignee is tenant in common with the solvent partner in the joint stock.

[Cited but not followed in Crompton v. Conkling, Case No. 3,407.]

[Cited in Curtis v. Woodward, 58 Wis. 502, 17 N. W. 331.]

5. A court of equity may give either the solvent partners or the assignee the settlement of the joint affairs.

6. The assignee may recover at law or in equity, as the nature of the case requires. from a solvent partner what is due from him by the articles of copartnership.

7. A statute of Massachusetts provides that limited partnerships may be conducted in the name of the general partner, and that the special partner shall be responsible for the capital contributed by him; and if, at the termination of the partnership, the assets are not sufficient to pay the partnership debts, he shall be responsible for all sums drawn out by him, with interest. A general partner in such a firm became bankrupt, with assets insufficient to pay the joint debts. *Held*, that his assignee could recover from the solvent special partner the sums withdrawn by him during the continuance of the firm.

8. Nutting v. Ashcroft, 101 Mass. 300, considered.

Action of contract by [C. W. Wilkins] the assignee in bankruptcy of the estate of C. W. Eaton to recover $3,545.49, alleged to be due from the defendant [G. P. Davis]. The parties waived a trial by jury, and submitted the case on the facts, agreed to be thus: The bankrupt and the defendant were associated in a limited copartnership in the clothing business, which was to have terminated Oct. 11, 1875; the bankrupt was the general partner, and carried on the business in his own name; the defendant was the special partner, and contributed the whole capital in cash; during the continuance of the firm he drew out, as interest on his capital, the sums sued for in this action; the general partner became bankrupt in July, 1875, the unpaid joint debts exceeding the value of the joint assets by more than $3,500. Eaton, in his petition, described himself as a member of the firm, but asked for no decree against the defendant or the firm; and none was made. No notice of the petition was given to the defendant: and the assignment to the plaintiff did not mention joint property, but was in the usual form (No. 18), and included "all property of whatever kind, of which he (the bankrupt) was possessed, or in which he was interested, or was entitled to have," on the day the petition was filed. The General Statutes of Massachusetts (chapter 56, § 8) provide that during the continuance of a limited partnership no part of the capital stock thereof shall be withdrawn, nor any division of interest or profits be made, so as to reduce the capital stock below the sum stated in the certificate which the law requires to be made and recorded; and that if, during the continuance or at the termination

of the partnership, the property or assets are not sufficient to pay the partnership debts, the special partners shall severally be held responsible for all sums by them in any way received, withdrawn, or divided, with interest. The fourth article of the agreement between the parties provided that they should divide profits and losses in the proportion of seventy-five per cent. to and by the special partner, and twenty-five per cent. to and by the bankrupt, except that in no event should the defendant lose more than the capital contributed by him and interest thereon, and the sums he may have withdrawn from the firm. The joint assets were included in the bankrupt's inventory, and had come to the possession of the assignee. The joint creditors had proved their claims.

J. R. Bullard, for plaintiff.
B. L. M. Tower, for defendant.

LOWELL, District Judge. I understand the defendant to admit that by the law of Massachusetts, as applied to the facts of this case, he is liable for the sums mentioned in the declaration, but to deny that the assignee has any interest in them. It has been announced of late, chiefly in dicta, that all the members of a firm must become bankrupt, in order that the assignees should be able to deal with the joint stock, or that a discharge should be obtained from joint debts. In re Little [Case No. 8,390]; In re Winkens [Id. 17,875]; Hudgins v. Lane [Id. 6,827]. Such, however, is not the law, as I understand it.

1. It has been settled for more than a century and a half, that, if one member of a firm becomes bankrupt and obtains his discharge, he is released from all his debts, joint and separate. Ex parte Yale, 3 P. Wms. 24, note a. This leading case is the law of England to-day. Ex parte Hammond, 21 Wkly. Rep. 865. It has not been necessary to reaffirm it often; but the doctrine has been acted on and applied in various ways. Where the bankrupt was a member of a company which was for some purposes a partnership, the court extended the rule to him: Thomson v. Harding, 3 C. B. (N. S.) 254. So the proceedings and pleadings in such cases have repeatedly recognized the law that one partner is discharged by his separate certificate; such as Bovill v. Wood, 2 Maule & S. 23; Noke v. Ingham, 1 Wils. 89; Booth v. Middlecoat, 6 Bing. 445. In this last case, it does not distinctly appear whether the bankrupt was a partner or a joint contractor; but the very absence of information upon the point shows it to be immaterial. See Lindl. Partn. 1027; Id. (2d Ed.) 1197; Colly. Partn. (5th Am. Ed.) § 858; Mont. & A. Bankr. (2d Ed.) 748; 1 Deac. Bankr. 797; Robs. Bankr. (2d Ed.) 554; Id. (3d Ed.) 596. If a creditor who had proved his debt against a bankrupt partner brought an action at law against the solvent members of the firm, and joined the bankrupt as a defendant, which at law he was bound

to do, for reasons not now necessary to be stated, yet the lord chancellor would require him to give security to the bankrupt against all damages and costs. Ex parte Read, 1 Rose, 461; Ex parte Stanton, 1 Mont. D. & D. 273; Ex parte Mills, 6 Ch. App. 594. Not only will the joint creditors be barred, but the bankrupt's copartners equally; because they may pay the joint debts, and prove against the bankrupt's estate the equitable debt arising from any deficiency in his account. Wood v. Dodgson, 2 Maule & S. 195; Afflalo v. Fourdrinier, 6 Bing. 309; Butcher v. Forman, 6 Hill, 583. I have had such cases. That a joint creditor can prove under a separate bankruptcy, and will, therefore, be bound by the discharge, is fully admitted in the United States. The early case of Tucker v. Oxley, 5 Cranch [9 U. S.] 34, went beyond this, and has been modified; but the general proposition laid down by the court, that such a debt is provable, has never been impugned. It is recognized in our statute (section 5118): "No discharge shall release, discharge, or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, or otherwise." Of similar language in the act of 1800 [2 Stat. 19], Marshall, C. J., said that it removed all doubt on the subject ([Tucker v. Oxley] 5 Cranch [9 U. S.] 40); and the authorities are as decisive as the argument. The fact that joint creditors cannot prove against the separate estate might mislead a careless reader of some of the cases into an impression that they could not prove at all; but the true rule is that they may prove, and may vote for assignee, and be heard on the discharge, and examine the debtor, and share any joint assets or any surplus of the separate assets. Heath v. Hall, 4 Taunt. 328; Ex parte Crisp, 1 Atk. 133; Crispe v. Perrit, Willes, 467; Ex parte Farlow. 1 Rose, 421; Ex parte Elton, 3 Ves. 238; Willson v. Gomparts, 11 Johns. 193; Barclay v. Phelps, 4 Metc. (Mass.) 397.

2. It is equally well settled, and is a necessary part of the theory, that the bankruptcy of one partner dissolves the partnership, excepting for the purpose of closing the joint affairs, and that the assignee is tenant in common with the solvent partner of the joint stock. It usually happens that the latter will be in possession of the stock, and this will not be disturbed, excepting for good reasons; and, on the other hand, if, as in this case, the assignee is in possession, that will not be disturbed without good cause. A court of equity has undoubted power to intrust either the solvent partner or the assignee with the exclusive control of the settlement; but if no order is made, the assignee having possession will go on and collect the joint assets, and pay the joint debts, by way of dividend, to those creditors who come in and prove. See West v. Skip, 1 Ves. Sr. 239; Dutton v. Morrison, 17 Ves. 193; Murray v. Murray, 5 Johns. Ch. 60; Parker v. Muggridge [Case No. 10,743];

Ayer v. Brastow [Id. 682]; Amsinck v. Bean, 22 Wall. [89 U. S.] 395.

It is argued that the assignee of one partner cannot interfere with the affairs of the firm, unless the decree of the court expressly confers upon him such a right. But no such point was taken in any of the cases above mentioned. On the contrary, the facts in all of them simply show that one partner was bankrupt. This, of necessity, disposes of all his property; and one part of that is his interest in any firm, or any number of firms, of which he was a member. It seems to be thought that one may be bankrupt and not bankrupt at the same time; bankrupt as an individual, and not so as member of a firm. This is impossible. A man may be bankrupt when the other members of his firm are solvent, and when the joint assets are in excess of the joint debts, because he may owe separate debts beyond the amount of his separate property added to his share in a solvent joint business. I have had such a case; and the assignee very properly made a settlement with the solvent partner, by which the joint debts were paid by the latter, and the value of the bankrupt's interest in the firm was paid over to the assignee for distribution among his separate creditors. If the balance had been against the bankrupt, the solvent partner, upon paying the joint debts, could have proved for it, and have received a dividend from the separate estate, as I have already shown. But the partner would be no less bankrupt in either case, and his assignee would have no other or different title, so far as his estate was concerned, than if all the members of the firm were bankrupt; though, of course, the settlement would be much easier with an entirely solvent partner than with one who was embarrassed, though not bankrupt; and the assignee might be obliged in the latter case to take upon himself a large part of the settlement of the joint affairs, or the whole of it, under the direction of a court of equity.

It is said that some of the remarks of the learned judge who delivered the opinion of the court in Nutting v. Ashcroft. 101 Mass. 300, assert that the assignee of the general partner acquires no interest in the joint stock, unless the firm is adjudged bankrupt after notice to the special partner. Those observations were not necessary to the decision, which was that the assignee of one partner could not sue the other partner in trover for joint stock. I can see no propriety in notifying a solvent partner of the petition of his copartner, nor any standing he would have to oppose or assent to the decree. Nor is it proper or lawful to adjudge a firm bankrupt which consists of a bankrupt general partner and a solvent special partner, nor is it material whether the firm, as such, is able to pay all its debts or not. The decree against the general partner necessarily includes his interest in the joint stock, for the simple reason that it is his. If it were not so, he might obtain his discharge, and then pocket

his share of the surplus of his solvent joint business, if it happened to be solvent, leaving his separate creditors discharged, but not paid, an injustice which the law does not permit. Nutting v. Ashcroft, ubi supra, appears to have been argued for the plaintiff on the assumption that the assignee of a general partner succeeds to his sole right to manage the joint affairs; which cannot be admitted. The bankruptcy dissolves the partnership, and I suppose the solvent special partner has the same right to wind up the affairs which a general partner would have, which is, to deal with such joint stock as he happens to have in his possession, with a like right in the assignee of the special partner, subject, as to both, to the decree of a court of equity, if applied for and necessary. This being so, the decision in Nutting v. Ashcroft was clearly right, because the action was trover, and neither tenant in common can maintain that action against the other; but the reason given, that the bankrupt had not assigned his interest in the joint stock, I cannot assent to; it contravenes all the cases above cited, is inadmissible in principle, and contrary to the very words of the assignment which conveys all his estate.

A rule of this court, as of several other district courts, requires the bankrupt to include his joint creditors in his schedules, in order that they may be notified and may prove their debts, and share in the joint assets and in any surplus of the separate assets, and exercise the right of examination, &c., as they may be advised. All this has been done here; and, besides, the inventory includes all the joint assets, because they were all in the hands of the general partner. If they had not been, he would merely have said, "My interest in such a firm, the joint property being in the possession of my partner B." His assignee's title would be the same in either case, though his right of possession would not.

3. The remaining question is, whether an action at law in the nature of assumpsit will lie to recover the sums which the special partner had drawn out while the firm was going on. The statute says that he shall be responsible for them, but does not say to whom. The articles of copartnership follow the statute to the extent of three-quarters of the losses. I suppose it to be clear that if the general partner had remained solvent, but the joint business had been unsuccessful, so that these sums were needed to make good the defendant's share of the loss, the general partner, if he had paid all the joint debts, and there were no question of accounts, could, by the law of Massachusetts, have maintained an action at law for this amount. If partnership accounts were to be settled, the general partner must go into equity; and if he refused to bring such a suit, and had not paid the joint debts, the creditors might bring one. So far, I apprehend, there is no dispute. If, the general partner remaining solvent, only a part of these sums were necessary to make up the defendant's share of loss, whether the creditors could compel him to pay them, without first resorting to the solvent partner, I do not know; but as they must join both partners in a suit in equity, the court could regulate that matter. The assignee, who succeeds to the rights of the general partner, might, undoubtedly, in some form of suit, oblige the defendant to make good whatever the partnership articles call for, which is three-quarters of the losses; and, upon the whole, I am of opinion that he can, upon some terms, represent the creditors likewise, and sue for the other quarter part. If the whole sum is clearly and admittedly requisite to make up the capital, according to the statute, the assignee may maintain an action at law for its recovery; if there are disputed accounts, he must proceed in equity.

If a corporation is bankrupt, and the shareholders are liable to definite assessments, which the corporation had the power to lay, the assignee may lay them, under the direction of the court, and may recover the amounts of the shareholders. If, on the other hand, the right of recourse against shareholders is given to the creditors independently of and adversely to the corporation, and especially if the creditors must work out their rights by a bill in equity, and different creditors have different rights depending upon the date of their debts, or upon estoppels applying only to a part of them, it might be impossible that all these equities could be worked out through the assignee. The authorities upon this point are not very clear; but I take the law to be that the assignee has all the rights and powers which are given to the whole body of creditors, or to the whole of any one class of creditors, whether at law or in equity, and may maintain any suit for which, for instance, a general creditor's bill would lie, and this exclusively of the creditors themselves.

In this case, the assignee has all the assets. No application has been made to this court in equity to restrain his proceeding; no objection is taken to it: he can and will distribute all the apparent assets; and I see no objection, and can think of none, to his recovering those he now sues for. In an ordinary case, the assignee must join the solvent partner as a plaintiff in a suit for assets; but here the defendant is the solvent partner; and either the assignee may maintain a suit, or it must be left to a creditor's bill, to which the assignee must be a party on the one side or the other, in order that he may show whether these sums are necessary to make up the deficiency, and that he may protect the interests of the separate creditors. It will be observed that the court of bankruptcy has full power to impose upon the assignee any terms, such as giving bond, that may be necessary to secure the rights of all parties.

If no order of this kind is asked for, the entry will be "judgment for the plaintiff."