CHARLES E. RUSSELL & another *vs.* GEORGE S. COLE.

Essex. November 6, 1895. — October 22, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Insolvent Debtor — Fraud — Partnership — Attachment — Conversion — Action — Parties — Damages.*

If A., who is insolvent, conveys, in pursuance of an arrangement to form a copartnership and in fraud of his creditors, a half interest in his stock in trade for a valuable consideration to B., who does not know of or participate in the fraud, B. becomes a copartner with A., the goods sold become partnership property, and B.'s rights are not affected by the fraud.

The attachment of partnership property on a writ against one partner is a trespass, and confers no title on the attaching officer.

An action for the conversion of partnership property attached on a writ against one partner is rightly brought in the name of both partners, although proceedings in insolvency are pending against such partner; and the fact that he was guilty of fraud in forming the partnership before the attachment was made does not prevent the maintenance of the action.

In an action for the conversion of partnership property attached on a writ against one partner, the defendant is not entitled to show, in mitigation of damages, that he delivered the property to the assignee in insolvency of such partner, but the solvent partner may recover its full value.

TORT, by Charles E. Russell and George W. Martin, copartners as Charles E. Russell and Company, for the conversion of certain personal property. Writ dated September 2, 1893. The defendant, who was a deputy sheriff, justified under a writ against the plaintiff Martin, on which he attached the property in question. Trial in the Superior Court, before *Fessenden*, J., who allowed a bill of exceptions, in substance as follows.

The case was referred to an auditor, who found and reported the following facts.

Martin had been carrying on business at two stores for several years, and had become embarrassed, was insolvent, was being pressed by his creditors, and was in immediate expectation of an attachment being put upon his stock. He had, some time before, made some proposition to Russell about going into partnership with him. In pursuance of this idea, an inventory of the stock was taken in the latter part of August, 1893. This inventory, omitting a small amount of book accounts which were

included in it, footed up $5,794.72. The prices carried out in it were the prices at which Martin bought the goods. Martin's offer to Russell was to take him in as an equal partner on the payment of one thousand dollars.

On August 31, Russell having decided to accept Martin's offer, the partnership papers were made and executed in the forenoon, and an order was given by Russell on a savings bank book on which there was nearly a thousand dollars due. The book itself was obtained by Russell when he went home to dinner, and was given to Martin about one o'clock. About two o'clock the attachment was made. The order was soon after transferred to Martin's wife, and is now held by her, and had been by her presented to the bank, but it was not paid.

"It was admitted that the formation of the partnership and the transfer of the interest in the goods by Martin to Russell as his partner was, on the part of Martin, in contravention of the insolvency laws, and with the purpose of preventing the attachment. There was evidence tending to prove that Russell knew the condition of Martin's affairs and his purpose in making the transfer, and also that there was an agreement between Martin and Russell that the money should remain in the bank until any difficulty was settled; but on the whole evidence I do not find these facts to be proved. So far as appeared, the partnership was to begin on the delivery of the papers. Russell went back to one of the stores, and was in possession there at the time of the attachment. He had not been in the other store, or taken any actual possession of the goods there, at the time of the attachment. But it seems to me that enough had been done to pass title to all the goods to him as partner.

"It was admitted that, since the attachment, Martin had been declared insolvent, and that his estate was being administered in the Insolvency Court, and that the goods attached by the defendant had been surrendered by him to Martin's assignee in insolvency.

"As no evidence was offered before me of the damages for such detention, I report that the plaintiff should recover only nominal damages, namely, the sum of one dollar. . . . But if the court should be of the opinion that the plaintiff is entitled to recover the value of the stock attached, then I further report

that, to my best judgment, the fair market value of the goods and fixtures at the time of the attachment would be twenty-six hundred dollars."

The plaintiffs put in evidence the auditor's report, and the defendant put in evidence a certificate of the insolvency proceedings of the plaintiff Martin.

It was then agreed that the defendant delivered the property in question to the assignee in insolvency of the estate of Martin on November 1, 1893.

It was also agreed that if the court, in the exercise of its discretion, might properly allow the plaintiff Russell to discontinue as to Martin as plaintiff, either by amendment or otherwise, and that, if the action could then proceed in the name of Russell alone, the fact that Martin was joined as plaintiff should not defeat the right of recovery.

The defendant then rested his case, and requested the judge to rule that, on the evidence and admissions, the action could not be maintained, because of the fraud in forming the partnership; but the judge refused so to rule.

The defendant also requested the judge to rule that, on the evidence and admissions, only nominal damages could be recovered. The judge refused so to rule, but ruled that, if the plaintiffs were entitled to recover, they could recover the full value of the goods, which it was agreed was $2,600, as found by the auditor.

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

The case was argued at the bar in November, 1895, and afterwards was submitted on the briefs to all the judges.

*C. H. Sprague*, for the defendant.

*C. A. De Courcy & W. Coulson*, for the plaintiffs.

KNOWLTON, J. The conveyance by Martin to Russell was on the part of Martin fraudulent as against creditors and in contravention of the statute relating to insolvency. But Russell had no knowledge of this fact, and did not in any way participate in the fraud. The contract, therefore, took effect according to its terms, Russell became a copartner with Martin, and the goods sold became partnership property. The rights of Russell, who bought in good faith for a valuable consideration, were not

in any way affected by the fraud of Martin, of which he was ignorant.

The property which thus became assets of the partnership under the contract could not afterwards be attached on a claim against one of the partners, and the defendant, as attaching officer, acquired no valid title. *Sanborn* v. *Royce*, 132 Mass. 594. *Pelletier* v. *Couture*, 148 Mass. 269, 271.

The action was rightly brought in the name of both members of the firm, notwithstanding the proceedings in insolvency against Martin. *Fish* v. *Gates*, 133 Mass. 441. *Fay* v. *Duggan*, 135 Mass. 242. *Hyde* v. *Moxie Nerve Food Co.* 160 Mass. 559. The fact that Martin was guilty of a fraud in forming the partnership before the attachment was made does not prevent the maintenance of the action. The principle of the decision in *Homer* v. *Wood*, 11 Cush. 62, is not to be extended to cases like the present. As, according to the finding of the auditor, the goods became partnership property even as to creditors, notwithstanding the fraud of Martin, the suit against the defendant for attaching it wrongfully does not involve any question in regard to the right of Martin to rescind or repudiate the contract, nor bring his previous conduct within the issue. The defendant's act in attaching the partnership property was a trespass; and the owners of the property, or the parties in possession of it, might sue for damages without regard to the question whether one of them in a previous transaction had been guilty of a wrong against third parties. *Hall* v. *Corcoran*, 107 Mass. 251. *Newcomb* v. *Boston Protective Department*, 146 Mass. 596, 602. *Stillings* v. *Turner*, 153 Mass. 534.

The remaining question in the case is whether the defendant is entitled to show in mitigation of damages that he delivered the property to the assignee in insolvency of Martin. After the commencement of the proceedings in insolvency, Russell alone had a right to the possession of the property. The assignee of Martin was only entitled to a share in the surplus of the partnership assets, if anything remained after paying the debts. The partnership, being solvent through the solvency of the partner Russell, was not brought into the Court of Insolvency, and that court acquired no jurisdiction to settle its affairs. It is to be remembered that our courts of insolvency are creatures of the

statute, and that they have no jurisdiction except that which the statute gives to them. Their only jurisdiction over partnerships is conferred by Pub. Sts. c. 157, § 120, *et infra*. It is only " when two or more persons who are partners become insolvent," that is, when the partnership is insolvent through the insolvency of all the members of the firm, that a court of insolvency acquires jurisdiction to settle the affairs of the partnership; and in such a case a warrant is issued upon which the joint stock and property of the firm and the separate estate of each of the partners are taken.

Until the enactment of St. 1894, c. 164, courts of insolvency had no jurisdiction in equity, and that statute confers no jurisdiction to interfere in the affairs of a partnership which is not brought into the court of insolvency by regular proceedings by or against it, except in cases where incidentally to the proceedings in insolvency there is a ground for equitable relief under the principles which govern other courts of equity.

When a partnership is dissolved by the death or insolvency of one of its members, the surviving partners in case of death, or the solvent partners in case one of the firm is in insolvency, are entitled to the possession of the partnership property, and are bound to pay all of the firm's debts. It is their duty to wind up the affairs of the partnership, and to pay over to the representative of the deceased or insolvent partner his share of the assets, if there are any after paying the firm's liabilities. *Fern* v. *Cushing*, 4 Cush. 357. *Dearborn* v. *Keith*, 5 Cush. 224. *Hanson* v. *Paige*, 3 Gray, 239, 242. *Cunningham* v. *Munroe*, 15 Gray, 471, 479. *Nutting* v. *Ashcroft*, 101 Mass. 300. *Pelletier* v. *Couture*, 148 Mass. 269, 271. *Amsinck* v. *Bean*, 22 Wall. 395. Lindl. Part. (2d Am. ed.) 669 *et seq.* If they fail to do their duty in these particulars, the executor, administrator, or assignee may have a remedy in a court of equity. So long as the solvent partners are ready and willing properly to settle the business and dispose of the property of the partnership, and properly to account for and pay over the proceeds, an assignee in insolvency, under our statute, has no right to the possession of the partnership property. The partnership property and the solvent members of the firm are not within the jurisdiction of the court of insolvency. They can be brought within its jurisdiction only upon proceedings in

equity under St. 1894, c. 164, founded upon facts which would give jurisdiction to a court of general jurisdiction in equity. Some of the dicta in *Wilkins* v. *Davis*, 15 Nat. Bankr. Reg. 60, and 2 Lowell, 511, are not in accordance with the decisions and practice under the statutes of Massachusetts. It follows that the surrender of the property by the defendant to Martin's assignee in insolvency was irregular and unauthorized. It cannot avail the defendant as a defence in this action by way of mitigation of damages or otherwise. In the opinion of a majority of the court, the plaintiff Russell was entitled to have from the defendant all of the property taken under the attachment, and, it not having been returned to him, he may recover the full value of it.                        *Exceptions overruled.*