(117 App. Div. 269)

### NEW YORK INSTITUTION FOR INSTRUCTION OF DEAF AND DUMB v. CROCKETT et al.

(Supreme Court, Appellate Division, First Department. January 25, 1907.)

1. BANKRUPTCY—PARTNERSHIP DEBTS.
    A judgment was properly scheduled as a debt of a petitioner in bankruptcy, though recovered on a partnership obligation; it being unnecessary to schedule it as a partnership debt.

2. COURTS—PRESUMPTIONS—JURISDICTION—REGULARITY OF PROCEEDINGS.
    The United States District Court being a court of record, proof of an order discharging a bankrupt raises the presumption that the court ac-

quired jurisdiction and that its proceedings were had in conformity to law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 140–143.]

**3.** BANKRUPTCY—CERTIFIED COPY OF ORDER OF DISCHARGE.

Where a joint judgment debtor instituted individual bankruptcy proceedings and scheduled the judgment, he being not otherwise indebted to the creditor, a certified copy of his discharge raised the presumption that the creditor had notice of the proceedings and of the scheduling of its judgment, since Bankr. Act July 1, 1898, c. 541, § 21, subd. "f," 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], makes such instruments evidence of the jurisdiction of the court, the regularity of the proceedings, and the making of the order.

**4.** SAME—PARTNERSHIP PROPERTY.

The equity of an individual in copartnership property passes to his trustee in bankruptcy, and firm debts are provable against him; the firm creditors sharing only in the individual estate after the individual creditors have been paid in full.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 555–559.]

**5.** SAME—DISCHARGE OF MEMBER FROM FIRM DEBTS.

An individual member of a firm may obtain a discharge in bankruptcy, not only from his individual debts, but from his firm liabilities, and without regard to the existence or nonexistence of firm assets.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 778.]

**6.** PARTNERSHIP—FIRM LIABILITIES—JOINT OBLIGATIONS.

That a judgment was rendered on a joint obligation of a bankrupt and another, and that they had at one time been copartners, did not show that it was a partnership obligation.

Appeal from Special Term, New York County.

Action by the New York Institution for the Instruction of the Deaf and Dumb against William F. Crockett and another. From an order of the Special Term of the Supreme Court, denying his petition to have canceled and discharged of record a certain judgment entered in the office of the clerk of the county of New York on the 7th day of March, 1901, as against him, pursuant to the provisions of section 1268 of the Code of Civil Procedure, upon the ground that he has been discharged therefrom by a discharge in bankruptcy, defendant Crockett appeals. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

David H. Taylor, for appellant.
Joseph M. Williams, for respondent.

LAUGHLIN, J. The judgment sought to be discharged is a deficiency judgment obtained in an action to foreclose a mortgage given by the defendant Crockett, the petitioner, and one John S. Roddy. The moving papers show that on the 5th day of August, 1902, more than one year prior to the application for cancellation of the judgment, the petitioner, in voluntary bankruptcy proceedings duly instituted by him in the month of June, 1902, in the United States District Court for the Southern District of New York, where he had resided for more than six months, was duly discharged from all debts and claims which

existed against him on the 9th day of June, 1902, and were provable
in bankruptcy. The motion was resisted by the plaintiff, and evi-
dently denied, upon the theory that the judgment was on a copartner-
ship obligation of the petitioner and Roddy, who were partners in busi-
ness; that the business of the copartnership had never been finally set-
tled; that there remained copartnership assets; that there was no ap-
plication for or adjudication in bankruptcy against the copartnership
firm; and that a copartnership firm obligation cannot be discharged
in bankruptcy instituted voluntarily or involuntarily by or against a
single member of the firm. The correctness of the legal propositions
upon which the objections to the cancellation of the judgment are evi-
dently based are neither conceded nor established by any controlling
precedent, and the propositions of fact asserted are not sustained by
the evidence.

First. The decisions in the federal courts on some of these ques-
tions are conflicting, and the decisions in the state courts, while tend-
ing toward the doctrine that a discharge in bankruptcy of an individual,
who was a member of a firm, discharges him from both individual and
copartnership debts, are not decisive on facts such as are here present-
ed. Neither in the petition in bankruptcy, nor in the schedules of as-
sets and liabilities, is there any reference to a copartnership. That pe-
tition showed that the petitioner owed debts which he was unable to
pay in full, and that he was willing to surrender all of his property for
the benefit of his creditors, except such as was exempt by law, and
that he desired to obtain the benefits of the acts of Congress relating
to bankruptcy; that schedule A, thereto annexed, showed, among
other things, a full and true statement of all his debts, the names and
places of residence of his creditors; and that schedule B contained an
accurate inventory of all his property, both real and personal. Sched-
ule A showed three debts—the first to the plaintiff, whose residence
is given, and that it is a deficiency judgment for $1,414.58, after fore-
closure of a mortgage. The second is a similar judgment to another
creditor for $1,420.70, and the third is to another creditor for moneys
advanced. Schedule B showed no property, except property of the
value of $30, which was therein claimed to be exempt from the opera-
tion of the bankruptcy statute. The order of the District Court, grant-
ed on the 5th day of August, 1902, discharging the petitioner, recites
that, whereas, he "has been duly adjudged a bankrupt under the acts
of Congress relating to bankruptcy, and appears to have conformed to
all the requirements of law in that behalf, it is therefore ordered by
this court that said William F. Crockett be discharged from all debts
and claims which are made provable by said acts against his estate,
and which existed on the 9th day of June, A. D. 1902, on which day
the petition for adjudication was filed by him, excepting such debts
as are by law excepted from the operation of a discharge in bank-
ruptcy." The proceedings in bankruptcy, intermediate the filing of
the petition and schedules and the order discharging the petitioner,
were not presented either in support of or in opposition to the motion.
The petitioner, however, showed by affidavit that the plaintiff had no-
tice of the bankruptcy proceedings in accordance with the provisions
of section 58 of the bankruptcy act of 1898 (Act July 1, 1898, c. 541,

30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]), which required, among other things, notice of all examinations of the bankrupt and of his application for discharge, and that he did not own any real or personal estate or property at the time of the recovery of the judgment, nor has he since.

The plaintiff showed, in opposition to the motion, by the affidavit of the widow of Roddy, the other joint debtor in the deficiency judgment, that the defendants were, as she believed and understood, engaged in building operations "for two or three years as copartners under the name of Roddy & Crockett." She specifies one building operation, and says that they conducted some others; but she gives no dates as to when their business commenced or ended. She also says that "she does not know of any property belonging at this time to the debtor, William F. Crockett, or of any money owing to him; that she is not at all acquainted with his affairs." The plaintiff further presented an examination of the petitioner on proceedings supplementary to execution on this judgment on the 26th day of November, 1901. His examination showed that his only business then was working for a corporation on a salary; that he had previously been in business with Roddy, commencing in 1895 or 1896, as speculative builders, but that the firm had ceased operations and wound up its business on or about the 6th day of October, 1901, and was "no longer in existence"; that the firm books were destroyed by fire on said 6th day of October, 1901; that all the debts of the firm, save this judgment and the other similar judgment scheduled by the petitioner, have been paid; that the firm, in the course of its building operations, purchased the premises upon which, from the complaint, it appears that the mortgage, which was foreclosed, was given. The complaint and judgment in foreclosure and deficiency judgment form part of the moving papers. They contain no reference to the firm, and show that a bond and the mortgage were executed by the defendants Crockett and Roddy jointly, for the purpose of securing the payment to the plaintiff of the sum of $28,000, and that Roddy's wife joined in the mortgage. It does not appear therefrom that the mortgage and bond were given to secure an indebtedness of the firm, or that the judgment was on a firm liability. It does not appear that the petitioner was indebted to the plaintiff otherwise than on this judgment, and, in view of his petition and schedules in bankruptcy and affidavit here presented, it must be assumed that he was not. The judgment was properly scheduled as a debt against the petitioner, even though recovered on a partnership obligation, because the members of the firm were jointly and severally liable for its debts, I think, in the circumstances, since the creditor could not have been misled, that it was not essential that it should have been scheduled as an obligation of the old firm. Loomis v. Wallblom, 13 Am. Bankr. Rep. 687, 102 N. W. 1114, 69 L. R. A. 771. See, also, West Philadelphia Bank v. Gerry, 106 N. Y. 467, 13 N. E. 453; Bernheimer v. Rindskopf, 116 N. Y. 428–440, 22 N. E. 1074, 15 Am. St. Rep. 414.

The record does not show whether or not the plaintiff appeared in the bankruptcy proceedings or proved its judgment therein. I regard that, however, as quite immaterial, because, by virtue of the provisions of section 39 of the bankruptcy act (30 Stat. 555 [U. S. Comp. St.

1901, p. 3436]), it was the duty of the referee in bankruptcy to give the notices required by section 58 of the bankruptcy act to be given to creditors, which included all examinations of the bankrupt, all meetings of creditors, and the application for discharge. The United States District Court is a court of record, and, on proof of the order discharging the bankrupt, the presumption would arise that the court obtained jurisdiction and that its proceedings were had in conformity to law; but we are not required to rest on this presumption, for a certified copy of the order granting the discharge was presented on the motion, and, by virtue of the provisions of subdivision "f" of section 21 of the bankruptcy act (30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]), that is declared to be "evidence of the jurisdiction of the court, the regularity of the proceedings, and of the fact that the order was made." It must therefore be presumed that the plaintiff had notice of the bankruptcy proceedings, and that its judgment, since the petitioner was not otherwise indebted to it, was scheduled as one of the debts from which he would seek a discharge. This is not controverted; but the plaintiff says that, the judgment being a partnership obligation, it was entitled to notice as a copartnership creditor that he was seeking a discharge from his copartnership obligations.

Support for this contention is found in some of the authorities, which, while conceding that a member of a copartnership firm may on his individual petition in bankruptcy obtain a discharge from the copartnership, as well as from his individual debts, yet maintain that it is essential, to accomplish this result, that the firm debts should be scheduled as copartnership obligations, and that the notice to the firm creditors should be notice to them as such, and that the petition in bankruptcy and the application for the discharge should show that the petitioner sought a discharge from firm as well as individual obligations. In most of the cases in which this view is expressed, the question as to the effect of a discharge was not before the court for adjudication, and the question before the court arose on an application in the bankruptcy proceedings for a discharge of the bankrupt, to amend by giving notice to his partners, or by proceedings for an adjudication against the firm as an entity. See In re Little, Fed. Cas. No. 8,390; In re Noonan, Fed. Cas. No. 10,292; In re Laughlin, 3 Am. Bankr. Rep. 1, 96 Fed. 589; In re McFaun, 3 Am. Bankr. Rep. 66, 96 Fed. 592; In re Wilkens, Fed. Cas. No. 17,875; In re Morrison, 11 Am. Bankr. Rep. 498, 127 Fed. 186; Matter of Freund, 1 Am. Bankr. Rep. 25; In re Meyers, 3 Am. Bankr. Rep. 260, 97 Fed. 757; In re Levy, 2 Am. Bankr. Rep. 21.

In Re Levy, supra, doubt is expressed as to whether a discharge of an individual would discharge him from firm debts, even though there were no firm assets. In Matter of Freund, supra, the opinion of the referee, which was adopted by the United States District Court, Northern District of Iowa, in January, 1899, shows that the question presented for decision was whether the bankrupt had complied with the law and was entitled to a discharge. That was a voluntary proceeding by an individual partner, and the only debts scheduled were firm obligations, although they were not scheduled as such. There had been no request to have the firm adjudged bankrupt, and the other

members of the firm did not have notice of the proceeding. The application for a discharge was denied upon the ground that the bankruptcy act of 1896, as interpreted by the United States Supreme Court in prescribing rule 8 of the general orders in bankruptcy (89 Fed. vi, 32 C. C. A. xi), fairly contemplates and requires that if an individual, who has been a member of a firm the affairs of which have not been finally settled, petitions in bankruptcy, he must set forth in his petition the existence of the partnership, and ask to have the other members brought in, and apply for a discharge from both classes of debts, by which I presume is meant that he must specify in his application the two classes of debts from which he seeks a discharge. The decision, which was merely a denial of the application for the discharge until the other partners were brought in, was manifestly sound, because, if there were firm assets, the interest of the individual member therein, after the payment of firm obligations, would be applicable to the payment of his individual debts, and the liquidation of the partnership business was the only certain way of ascertaining whether there would be a surplus available for the individual creditors. In so far, however, as the opinion in the Freund Case holds that the present bankruptcy act, as interpreted by said rule adopted by the Supreme Court of the United States, prescribes the contents of the petition in bankruptcy or of the application for a discharge, I fail to find any authority therefor. Of course, if the statute prescribed, as thus intimated, that where it was sought to obtain a discharge from partnership obligations the petition must set forth the material facts with respect to the existence of and his interest in the firm, compliance with this requirement would doubtless be jurisdictional, and it might well be that either the discharge would be void, if compliance therewith had not been made, or it would be ineffective as to firm obligations. The statute contemplates that the proceeding shall originate by petition (subdivision "b," § 3, section 4, and subdivisions "a," "g," § 18, 30 Stat. 546, 547, 551 [U. S. Comp. St. 1901, pp. 3422, 3423, 3429]); but it appears to be silent concerning the contents of a voluntary petition at least. Doubtless the jurisdictional facts should be stated. They relate to the existence of provable debts, the residence or domicile of the individual or his principal place of business, or the location of property within the jurisdiction of the court (section 2 [1], 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]); and, in the case of a copartnership, to the fact that the business has not been finally settled (section 4a).

Rule 8 of the general orders in bankruptcy, adopted by the Supreme Court at the October term, 1898, is as follows:

"Any member of a partnership, who refuses to join in a petition to have the partnership declared bankrupt, shall be entitled to resist the prayer of the petition in the same manner as if the petition had been filed by a creditor of the partnership, and notice of the filing of the petition shall be given to him in the same manner as provided by law and by these rules in the case of a debtor petitioned against; and he shall have the right to appear at the time fixed by the court for the hearing of the petition, and to make proof, if he can, that the partnership is not insolvent or has not committed an act of bankruptcy, and to make all defenses which any debtor proceeded against is entitled to take by the provisions of the act; and in case an adjudication of bankruptcy is made upon the petition, such partner shall be required to file a schedule of his debts

and an inventory of his property in the same manner as is required by the act in cases of debtors against whom adjudication of bankruptcy shall be made."

It is manifest that this rule has no application to a petition by an individual who is a member of a firm to have himself, and not the firm, adjudicated a bankrupt. See Collier's note to Matter of Freund, 1 Am. Bankr. Rep. 31–33. It is evident that an individual may be a member of a solvent firm and at the same time be insolvent himself. This rule shows quite clearly that the firm cannot be declared insolvent unless it is such in fact. In such circumstances, unless, therefore, the individual may by his own petition obtain a discharge in bankruptcy, even though insolvent, he could obtain no relief under the bankruptcy act. Where a firm is solvent, and an individual member thereof is inso'vent and desires to be discharged in bankruptcy, it is manifest that he is entitled to such discharge, and that the business of the firm should be wound up, and his surplus interest applied in liquidation of his individual debts. This is fairly contemplated and provided for by subdivision "h" of section 5 of the bankruptcy act (30 Stat. 547, 548 [U. S. Comp. St. 1901, p. 3424]), which reads as follows:

"In the event of one or more, but not all, of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

See Collier's notes to Matter of Freund, supra.

There are federal decisions under the present bankruptcy law holding, but without referring specifically to said subdivision "h" of section 5, as was held under the act of 1867, which did not contain a simi'ar provision, that the copartnership assets cannot be reached on an individual proceeding in bankruptcy, and that it is essential that the firm should be proceeded against directly. In re Shepard, Fed. Cas. No. 12,754. If by this is meant that they cannot be directly reached, the doctrine is doubtless sound; but the statute clearly contemplates that they shall be reached indirectly by the other members of the firm accounting to the trustee in bankruptcy. It has been held by the Circuit Court of Appeals of the United States in the Third Circuit (In re Mercur, 10 Am. Bankr. Rep. 505, 122 Fed. 384, 58 C. C. A. 472), on an application to consolidate and amend individual petitions of all members of a firm by asking that the firm be adjudicated a bankrupt, that, where each member of a firm individually applies for an adjudication in bankruptcy, the firm assets cannot be administered by the bankruptcy court; but that difficulty may be readily overcome by having the firm adjudged bankrupt.

Section 70 of the bankruptcy act (30 Stat. 565, 566 [U. S. Comp. St. 1901, p. 3451]) provides, among other things, that the title of the bankrupt to any property "which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him," vests in the trustee as of the date of the adjudication in bankruptcy. It is well settled that the interest of an individual member of a

firm may be assigned by him; but the assignee only acquires the proportionate share of the member in the surplus remaining after the payment of the copartnership debts and the adjustment of the equities between the members of the firm, and does not acquire any title to the corpus of the firm assets, which remain a primary fund for the payment of the firm debts, with the right in the assignor, as well as in the creditors, to compel their appropriation thereto.   Saunders et al. v. Reilly, 105 N. Y. 12, 17, 12 N. E. 170, 59 Am. Rep. 472; Menagh v. Whitwell et al., 52 N. Y. 146, 11 Am. Rep. 683.   The right of firm creditors to have the firm assets applied in payment of their claims is derivative, and is founded upon the rights of the members of the firm, as between themselves, to have the firm ·assets first applied in liquidation of firm liabilities.   Saunders et al. y. Reilly, supra.   If, therefore, this interest of a member of a firm is assignab'e by him, it follows, both on principle and by virtue of the express terms of the bankruptcy act, that it must pass to his trustee in bankruptcy.   I think it may now be regarded the well-settled rule, not only that the equity of an individual in copartnership property, which is his separate estate, passes to his trustee in bankruptcy, but also that the firm debts are provable against him in bankruptcy, the firm creditors, of course, to share only in the individual estate after the individual creditors have been paid in full (Amsinck v. Bean, 89 U. S. 395; 22 L. Ed. 801; West Philade'phia Bank v. Gerry, 106 N. Y. 467, 13 N. E. 453; Berry Bros. v. Sheehan [1st Dept., Nov. Term, 1906] 101 N. Y. Supp. 371; Loomis v. Wallblom [Minn., 1905] 13 Am. Bankr. Rep. 687, 102 N. W. 1114, 69 L. R. A. 771; Wilkins v. Davis, 15 N. B. R. 64, Fed. Cas. No. 17,664; Curtis v. Woodward, 58 Wis. 499, 17 N. W. 328, 46 Am. Rep. 647; In re Laughlin, supra; Jarecki Mfg. Co. v. McElwaine, 5 Am. Bankr. Rep. 751, 107 Fed. 249; In re Webb, Fed. Cas. No. 17,316), and that the bankruptcy of the individual dissolves the firm (Wilkins v. Davis, supra; Kirby v. Schoonmaker, 3 Barb. Ch. 49, 49 Am. Dec. 160; Amsinck v. Bean, supra).

In Curtis v. Woodward, supra, the court, in discussing the question as to the property passing to the assignee in bankruptcy under the act of 1867, say:

"The bankrupt thus became divested and stripped of all his estate, property, and rights of property, and all actions and rights of action relating to property or rights of property, whether in law or in equity, which by operation of law were thus vested in the assignee in bankruptcy. This complete separation of the bankrupt from his former estate, property, and rights of property and of action seems to render the question relating to the distribution of such estate and the marshaling of such assets immaterial to the question of his discharge."

It would therefore seem clear that an individual member of a firm may, on his own independent application, made in his own right, obtain a discharge, not only from his individual debts, but from his firm liabilities, and that the existence or nonexistence of firm assets is immaterial to the decision of this question.   This view was expressed by the Supreme Court of Wisconsin in Curtis v. Woodward, supra; but it is opposed by many cases in the federal District Courts, and some in this district, which appear to be to the effect that the discharge

may be complete or only partial, and that it is complete against all creditors when the firm is adjudged bankrupt, or there are no firm assets and the firm debts have been scheduled as such, but partial only and limited to the individual creditors when the individual alone is adjudged bankrupt, and especially if there are firm assets. In re Kaufman, 14 Am. Bankr. Rep. 393, 136 Fed. 262; In re Abbe, 2 N. B. R. 75, Fed. Cas. No. 4; In re Knight, 8 N. B. R. 436, Fed. Cas. No. 7,880; Hudgins v. Lane et al., Fed. Cas. No. 6,827; Matter of Feigenbaum, 7 Am. Bankr. Rep. 339, 151 Fed. 508; Crompton v. Conkling et al., Fed. Cas. No. 3,408; Id., Fed Cas. No. 3,407; Trimble v. More, 47 N. Y. Super. Ct. 340; In re Hirsch et al., 3 Am. Bankr. Rep. 344, 97 Fed. 571; Dodge v. Kaufman, 46 Misc. Rep. 248, 91 N. Y. Supp. 727, following In re Meyers, 3 Am. Bankr. Rep. 260, 97 Fed. 757.

It is difficult to reconcile this view, if it relates to a discharge granted in the general language of the statute, with the plain mandatory language of section 17 of the bankruptcy act (30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]) that "a discharge in bankruptcy shall release a bankrupt from all of his provable debts," with certain exceptions not here involved. Since partnership debts are provable against a bankrupt's individual estate, it is difficult to see why they are not discharged by a discharge which follows the language of the statute. It appears to me to be a question of jurisdiction, and that where, as in this case, the bankruptcy court acquired jurisdiction and granted a complete discharge under the statute, without attempting to make any reservation, it should be given effect as such. It may well be that, if the adjudication and discharge in bankruptcy are expressly limited to the individual debts, the discharge would not relieve the bankrupt from liability on firm obligations; and, if that is what is meant by the decisions on that subject to which reference has been made, they are doubtless sound. Here, however, the discharge is complete, without qualification or limitation, and in the absence of the decree it must be assumed that the discharge is in accordance with the decree.

I find nothing in the bankruptcy act which requires, as a condition precedent to the right of the bankrupt to be discharged, that his estate shall have been completely administered and the accounts of the trustee finally settled. The discharges are sometimes, if not usually, granted before the estate has been completely administered. A discharge in bankruptcy has not been construed as a cancellation of the debts, which precludes the appropriation of the property in the hands of the trustee to the payment thereof. The discharge is designed to enable the debtor to start anew in the business world, without being embarrassed by his former obligations which were provable and dischargeable in bankruptcy. It would seem that the same rule would apply to the appropriation of the partnership assets to the payment of the partnership debts, even after an individual discharge in bankruptcy of a member of the firm, although the partnership assets in such case are not administered directly by the bankruptcy court. The discharge of the indebtedness and cancellation of the judgment could not, I think, deprive the creditor of the right to prove the judgment against the

partnership and have the same paid from the partnership assets. Nor would it, then, in view of the partnership relation and the rights of the other members of the firm who were not parties to the individual bankruptcy proceeding, become an individual debt chargeable, in the adjustment of the equities between the partners, to the members other than the one who was discharged in bankruptcy. If, however, this be regarded as doubtful, the difficulty may be obviated by deferring the discharge until after the partnership business has been liquidated by the members of the firm who are not in bankruptcy, and until they have accounted to the trustee in bankruptcy for the interest, if any, of the bankrupt member of the firm, so that all assets, individual and firm, shall have been administered or shall be in the custody of the bankruptcy court.

It was doubtless competent for the Supreme Court of the United States, by virtue of the authority conferred by section 16 of the bankruptcy act (30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), to prescribe that a petitioner should state in his petition whether or not he is a member of a copartnership the business of which has not been finally settled, and, if so, his interest therein, and whether there are firm creditors from whom he seeks a discharge and firm assets unadministered, which could then be reached under subdivision "h" of section 5; and doubtless the bankruptcy court could adopt rules on the same subject not inconsistent with those adopted by the Supreme Court. The Supreme Court has prescribed forms for petitions by individuals and for petitions by copartnership firms; but I find no provision in those forms requiring that in an individual petition it must be set forth whether the applicant is a member of a copartnership firm, and I find nothing in the rules prescribed by the Supreme Court on the subject, or dealing with the subject of whether in any circumstances the discharge may be partial and not complete. I am of opinion, therefore, that no question of jurisdiction is presented, and that, at most, a suspicion is cast on the regularity of the petitioner's bankruptcy proceedings according to some of the federal decisions; but even that depends upon there being a partnership business which has not been finally settled and on this judgment being a partnership obligation. In these circumstances, I think the true rule is, and that the tendency of the decisions in the state courts, at least, is toward holding, that, where the court acquires jurisdiction and grants a full discharge in the language of the statute from all provable debts properly scheduled not specially excepted, joint as well as individual debts are discharged. Curtis. v. Woodward, supra; West Philadelphia Bank v. Gerry, supra; Loomis v. Wallblom, supra; Jarecki Mfg. Co. v. McElwaine, supra; Wilkins v. Davis, supra; Berry Bros. v. Sheehan, supra.

Second. I am also of opinion that, even though the foregoing rule be unsound, the petitioner was entitled to have the judgment canceled; for it does not satisfactorily appear that this was a firm obligation or that the firm has any remaining assets. It has been seen that the obligation on which the deficiency judgment was recovered was a joint obligation of the petitioner and Roddy; but that alone does not make it a firm debt, although the firm property might have been sold

thereon, at least if the partners did not object and there was no fraud as against firm creditors. Saunders v. Reilly, supra; Davis v. Pres., etc., D. & H. Canal Co., 109 N. Y. 47, 15 N. E. 873, 4 Am. St. Rep. 418. Under the federal bankruptcy decisions, which, on this point, appear to be uniform, it would not have been competent, even if the firm had gone into bankruptcy, to have shown that the obligation upon which this judgment was recovered was in fact an obligation on which credit was given to the firm, or that the firm had the use or benefit of money borrowed thereon, to thereby make it a firm charge (In re Jones, 8 Am. Bankr. Rep. 626, 116 Fed. 431; Strause et al. v. Hooper et al., 5 Am. Bankr. Rep. 225, 105 Fed. 590; Collier on Bankruptcy [3d Ed.] 72, 73); nor has it been shown to be a firm obligation within the liberal rule prescribed in Berkshire Woolen Co. v. Juillard et al., 75 N. Y. 535, 31 Am. Rep. 488, where the Court of Appeals held in a proceeding in equity that a joint and several obligation of all the members of the firm, shown to have been given in the firm business and for the benefit of the firm, could be proved as a charge against the firm assets in the hands of a receiver of the insolvent firm, the credit having in fact been given to the firm, although the firm was not mentioned in the contract. Even under that rule, it would be essential to show, dehors the record, both that the credit was given to the firm and that the firm had the use of the money, the proceeds of the obligation. See Turner v. Jaycox, 40 N. Y. 470.

The claim that this was a firm obligation is based upon the fact that the firm at one time owned the mortgaged property, and that the petitioner answered in the affirmative two leading questions with respect to whether there were any other judgments against the firm, or whether it owed any other debts; but it is manifest that that is wholly insufficient. Moreover, if it were a firm obligation, it does not satisfactorily appear that the firm owns any undistributed assets. This copartnership business was of such a nature that it could have been readily settled, and doubtless was practically settled, as they parted with each piece of property in which they invested. It might fairly be inferred from the evidence that the firm is not only not in existence, but that its assets have been distributed and a final settlement made between the partners; and, if these facts are fairly established, the court would have had no authority to entertain bankruptcy proceedings against the firm. Section 5a. No property was discovered on the plaintiff's examination of the petitioner in supplementary proceedings before his bankruptcy. The plaintiff, on subsequently receiving notice of the bankruptcy proceedings, had notice that he still claimed to have no property, except two items, of the value of $30, which he claimed to be exempt. The plaintiff had an opportunity in the bankruptcy proceedings to further examine him, and to ascertain whether he had any other property than that embraced in his schedules in bankruptcy. Bankr. Act, § 55, subd. "b," 30 Stat. 559 [U. S. Comp. St. 1901, p. 3442]. This was a proper subject of inquiry by the bankruptcy court. There, perhaps, the burden was on the petitioner; but after the discharge I think it would be on the creditor. Loomis v. Wallblom, supra; Crompton v. Conkling, Fed. Cas. No. 3,408.

It should be presumed on this record, in favor of the discharge, that; if the attention of the bankruptcy court was drawn to this question, the court must have decided that there was no firm property to be administered, or the discharge would not have been granted (see In re Meyers, 2 Am. Bankr. Rep. 707, 96 Fed. 408) ; and I do not see how we could examine the proceedings in bankruptcy, even if they were before us, to discover whether or not the attention of the bankruptcy court was drawn to the partnership, with a view to impeaching or modifying the apparent effect of the discharge. If it appeared probable that the bankruptcy court had been deceived by the petitioner, and that he had concealed his property, or concealed the fact of an existing partnership with assets undistributed, the application for the cancellation of the judgment might well have been denied, or held to enable the judgment creditor to apply to the bankruptcy court to open the proceedings or vacate the discharge. The failure of the petitioner to refer to the old partnership, which he claimed had been finally settled, surely was not jurisdictional, even if he had been in error. In any view of this case, therefore, as presented by this record, the petitioner was entitled to have the judgment canceled.

It follows that the order should be reversed, with $10 costs and disbursements, and motion granted, with $10 costs.

INGRAHAM, J., concurs. CLARKE and SCOTT, JJ., concur in result.